REBECCA WHEELER, Respondent, v. ST. JOSEPH STOCK YARDS & TERMINAL COMPANY, Appellant.

Kansas City Court of Appeals, April 10, 1896.

1. **Negligence:** INGREDIENTS. The ingredients of actionable negligence are, the existence of a duty to the injured party, the failure to perform that duty, and the resulting injury.

2. **License:** REVOCATION: BURDEN OF PROOF. Where the owner relies upon the fact of the revocation of a license, the burden is on him to show it.

3. **Negligence:** LICENSE: REVOCATION. The inclosure of outlying land with a lawful fence will ordinarily be sufficient to revoke the public's license to travel thereover. But where one undertakes to inclose his property under circumstances that render it dangerous for those likely to pass over it, it becomes his duty to give some sort of warning thereof; and this is the case if it appear that the obstruction is placed so as to keep the licensee from entering the premises.

4. ———: ———: ———: NOTICE. A landowner who puts up a sufficient barricade to prevent people passing over his land has sufficiently discharged his duty, and will not be liable for removal of such barricade, unless he has sufficient notice thereof to prevent the injury complained of.

5. ———: ———: ———: CAUSE OF INJURY. The evidence in this case was sufficient to justify the jury in finding defendant's removal of a plank in a bridge floor the cause of plaintiff's injury.

6. ———: ———: ———: BARRICADE: INSTRUCTION. When licensor revokes a license to the public to travel over his uninclosed lands by removing a bridge floor, he should maintain a barricade for such time as would be reasonable to notify the public of the condition of the bridge; and an instruction to that effect is proper.

7. ———: AGENT: SERVANT. The knowledge of an agent of the removal of a barrier which it was his duty to construct, is knowledge of the principal; but the knowledge of an employee or servant is not notice to the defendant, and an instruction with regard to notice in this case is erroneous but harmless.

ON MOTION FOR REHEARING.

8. **Principal and Agent**: KNOWLEDGE OF AGENT: NOTICE TO PRINCI-
PAL. The rule imputing knowledge of the agent to the principal is
confined to knowledge acquired by the agent at the time he is dis-
charging the duties of his agency.

9. ——: ——: ——: MASTER AND SERVANT: DEFINITIONS. The
line of demarcation between principal and agent and that of master
and servant is exceedingly difficult to define, the essential difference
being in degree rather than in kind. The term employee has no
greater signification than that of servant.

10. **License**: REVOCATION: NOTICE: TRESPASSER. Placing a barbed
wire fence on the south side of uninclosed land over which the public
had acquired a license to travel may not *per se* be notice of the revo-
cation of a license to use a bridge on the north side of the tract when
there are other ways leading over the land from the bridge, than the
one fenced; and one may not lay a trap for even a trespasser.

*Appeal from the Buchanan Circuit Court.*—HON. A. M.
WOODSON, Judge.

AFFIRMED.

*Brown & Pratt* for appellant.

(1) The evidence shows that the plaintiff's hus-
band, John A. Wheeler, was a trespasser with notice of
the withdrawal by defendant of its license to use the
road; therefore, defendant owed him no duty. (2)
Because the evidence, which was not contradicted, and
was conclusive upon the question of fact, showed the
defendant built a sufficient barricade. This was the
limit of defendant's duty to all travelers along the
road, whether licensees or trespassers. (3) Defend-
ant was not bound to maintain a barricade. If it built
a sufficient one, it fulfilled its duty to all travelers,
whether licensees or trespassers. (4) There was abso-
lutely no testimony tending to show notice upon the
part of defendant or any of its servants, that the barri-
cade had been torn down. *Ratte v. Dawson*, 52 N. W.
Rep. (Minn.) 965; *Lacbat v. Lutz*, 22 S. W. Rep. (Ky.)

218; *Benson v. Traction Co.*, 26 Atl. Rep. (Ind.) 973; *Sterges v. Van Sicklen*, 132 N. Y. 299; *Walsh v. Railroad*, 145 N. Y. 301; *Farris v. Hoberg*, 33 N. E. Rep. (Ind.) 1028; *Walker v. Stanley*, 29 N. E. Rep. (Mass.) 518; *Barney v. Railroad*, 28 S. W. Rep. (Mo.) 1069; *Jelly v. Pieper*, 44 Mo. App. 380; *Isenberg v. Carlson*, 54 Ill. App. 470; *Breckenridge v. Bennett* (Pa. Com. Pl.), 7 Culp. 95; Shearman & Redfield on Negligence, secs. 505, 360. (5) Instruction number 4 was erroneous because it submitted to the jury the question as to whether any of defendant's servants had knowledge of the removal of the barricade. It allowed the jury to speculate as to whether or not any servants of defendant had any notice of the removal of the barricade upon which there was no testimony. *Dunn v. Railroad*, 98 Mo. 655.

*James W. Boyd* for respondent.

(1) The appellant's demurrer to the evidence was properly overruled. The evidence not only makes a case, but makes a strong case, for respondent. This road had been used for years. The part of the road which appellant claims was on its land, was of course used as extensively as the parts north and south of it, which were parts of the old highway. The evidence fully sustains the case. The appellant is liable. *Morrow v. Sweeny*, 38 N. E. Rep. 187; *Carscaddon v. Mills*, 31 N. E. Rep. 559; *Phillips v. Library Co.*, 27 Mo. App. 478. Such is the humanity of the law one may not excusably place pitfalls, or wolf traps, or spring guns on his premises to catch and injure even willful trespassers. *Fink v. M. T. Co.*, 10 Mo. App. 61; *Brown v. Railroad*, 50 Mo. 461, 468. A demurrer to the evidence admits every fact shown and every inference which may be drawn therefrom in favor of the plaintiff.

*Herbert v. Goal,* 47 Mo. App. 255; *Glech v. Railroad,* 57 Mo. App. 259; *Franke v. City,* 110 Mo. 516, and cases cited. (2) If the appellant put a barricade across the road, as its witnesses say, still, according to the testimony of appellant's own witness, it was removed in a very short time. Appellant knew of its removal; knew it had not remained long enough to be any notice to the people, and the question of appellant's knowledge of its removal was, on motion of appellant, submitted to the jury. The appellant induced the court to adopt the theory, at the trial, that if the barricade was placed and removed, respondent could not recover unless appellant had notice of its removal; that is, that under such circumstances mentioned in its instruction 5, respondent could recover if "defendant had notice of such removal." Appellant can not now in fairness repudiate the theory which it induced the circuit court to adopt at the trial. *Whitmore v. Lodge,* 100 Mo. 36; *Harris v. Hays,* 53 Mo. 90; *McGonigle v. Dougherty,* 71 Mo. 259; *Bank v. Hammerslough,* 72 Mo. 274; *Smith v. Culligan,* 74 Mo. 387; 91 Mo. 628; *Bates v. McGoon,* 85 Mo. 580; *Noble v. Blount,* 77 Mo. 235; *Holmes v. Braidwood,* 82 Mo. 610; *Reilly v. Railroad,* 94 Mo. 600; *Bank v. Armstrong,* 93 Mo. 265–279; *Crutchfield v. Railroad,* 64 Mo. 255; *Davis v. Brown,* 67 Mo. 313; *Richardson v. Palmer,* 36 Mo. App. 88; *Martinowsky v. City,* 35 Mo. App. 70. (3) The case was one for the jury.

SMITH, P. J.—The petition alleges that the plaintiff is the widow of John Wheeler, deceased, who lost his life on account of injuries received by him through the negligence of the defendant. The case presented by the record may be stated to be something like this:

The defendant owns a large body of uninclosed bottom land, situate near the city of St. Joseph and bordering on the Missouri river. The defendant's stock

yards, packing houses, etc., set back a half a mile or more from the river, and from them the defendant, some years since, for drainage purposes, constructed a ditch extending to the river. The ditch was about twenty feet wide, eight deep, and a half mile or more in length. There was a bridge thrown across the ditch near where it connects with the river. There was a road leading from St. Joseph to Lake Contrary that passed through the defendant's uninclosed land and over this bridge. It was a public traveled road. The part of it running through defendant's land had been used by the public for several years by the mere acquiescence of the defendant, but it had not been used by the public for a sufficient length of time, or under such circumstances, as to create a public highway by user. The right accorded the public to use the road was no more than a bare license to do so.

In January, 1894, the defendant constructed a barbed wire fence, commencing at a point on the Packing House road, west of the ditch about one hundred and fifty yards, and from thence running north, nearly parallel with the ditch, to the Missouri river. This fence closed the St. Joseph and Lake Contrary road at the point where it crossed the same. The defendant, desiring also to bar the entry of the public by the bridge, upon that part of their inclosed lands lying between the wire fence and the ditch, at about 3 o'clock in the afternoon of the day the fence had been projected across said road, erected a barricade across the north end of the bridge. The evidence is conflicting as to the exact time of day when it was completed, and as to the structure and materials of the same. It, however, appears from the undisputed testimony that the wire fence and the barricade were constructed under the direction and supervision of Mr. Siecks, the superintendent of defendant's stock yards; that when the

barricade was erected, Mr. Siecks caused a plank to be torn from the floor of the bridge and hidden away in the weeds. He testified that the plank removed was the fourth or fifth from the north end of the bridge.

One Brunnell, a witness for defendant, testified that betwixt 4 and 5 o'clock in the evening after the barricade had been erected, he came over the road from the direction of St. Joseph, and on arriving at the bridge he discovered the defendant's barricade in front of the bridge; that he lifted the posts out of their holes and set them aside. He testified further that there was a plank missing near the center of the bridge and that he replaced it with the one he took from the barricade, after which he drove across the bridge, leaving the barricade down. There was other testimony to the effect that the plank was removed from near the south end of the bridge. There was also evidence adduced tending to prove that the barricade was standing between sundown and dark. The defendant's general manager and superintendent both testified that they saw the barricade standing as late perhaps as 6 o'clock that evening. The latter testified that he remained in the vicinity of the barricade until 6 o'clock in the evening and during that time could have seen anyone crossing the bridge, but that no one did cross it. The men who put up the barricade were engaged in fence making in that vicinity until half past 5 or 6 o'clock of that evening.

It further appears that on the day the barricade was put up the deceased and one Parker, who resided near Lake Contrary, each went to St. Joseph with a two-horse wagon and returning by the Lake Contrary road reached the bridge shortly after dark. The deceased was in advance and drove onto the bridge. Parker's team followed close behind. The witness Parker testified that when the team of deceased was

"just going off the bridge," it "ran against something, or stopping on something, I don't know which it was—of course it was dark when we got there—and the team ran back and jammed his first wheel over the bridge and it doubled over me and took my team in behind him." The result was that the team of deceased took fright at something when near the south end of the bridge and instead of going forward, backed the wagon of deceased against the tongue of that of Parker and in that way forced Parker's team and wagon, with that of deceased, off the bridge, into the ditch below. An hour later, the lifeless body of the deceased was found in the ditch, under the wreck, from where it was removed.

The plaintiff had judgment in the court below and the defendant has appealed.

The first question which we are required to determine is whether the evidence, as we have stated it to be, was sufficient to justify the submission of the case to the jury. Unless the evidence shows, *first*, the existence of a duty on the part of defendant to protect the deceased from the injury of which plaintiff complains; *second*, a failure by defendant to perform that duty; and, *third*, an injury to deceased from such failure of the defendant—the plaintiff must fail in her action. To constitute actionable negligence, these three ingredients must be shown to coexist.

It is pertinent to inquire whether the deceased was a trespasser, or a licensee, at the time he attempted to cross the bridge. He was certainly one or the other. If the deceased had any right to use the defendant's property, it was the same as that which the public had. The latter used the defendant's property for several years without objection. This, while not amounting to a dedication or giving the public an easement, did amount to a license. A license may be created by

acquiescence in the use of property for the purpose in question, without objection. It is conceded that the public sustained the relation of licensee to the defendant's property, at the time the latter erected the wire fence and the barricade. A mere license to travel over the land of another may be revoked at any time, at the pleasure of the licensor. *Carscaddon v. Mills*, 5 Ind. App. 22; *Parish v. Karpau*, 109 Ind. 586; *Sampson v. Wright*, 21 Ill. App. 67; *Pitzman v. Boyce*, 111 Mo. 387; *Tatum v. St. Louis*, 125 Mo. 647.

Since it is contended by the defendant in the present case that the license was revoked, the burden is upon it to show that fact. *Blunt v. Barrett*, 54 N. Y. (S. C.) 548. Does the evidence tend to prove a revocation?

The inclosure of outlying land with a lawful fence will, under ordinary circumstances, be sufficient to amount to a revocation. And no reason is seen why the barricading of the approach to a bridge over a ditch or stream running through inclosed lands may not be a sufficient revocation of the license to use such bridge. The law accords to everyone the right to use his property, subject only to the limitation that he so use it as not to inflict injury upon others. This principle finds expression in the maxim: *"Sic utere tuo ut alienum non laedas."* There is a duty, therefore, resting upon all persons to so use their property that in such use they may not injure others in the exercise of their rights. The duty thus imposed extends only to the recognizing and observing such rights. If no rights exist, there is no duty imposed. Whenever one undertakes to inclose his property under circumstances that render it dangerous for those likely to pass over it, and which the former must anticipate will incur injury by it, it becomes his duty, if such dangerous means must be employed to accomplish the purpose, to give some

sort of warning. While the owner has the clear right to revoke the license he must do so in a manner not calculated, under ordinary circumstances, to inflict injury unnecessarily. Although a licensee acquires no interest in the property over which he is allowed to travel, he yet has the right not to be willfully, or even recklessly, injured by the acts of the owner. It is thus seen that the licensor may owe some duty to the licensee.

The application of this principle is well illustrated by those cases where it has been held that a landowner, who has permitted the public to travel in vehicles and otherwise over his uninclosed lands, until there was a well defined way across the land, indicating that the public were in the habit of passing over the same, has the right to forbid the further use of the way and to that end may fence the land; but he must do so in a manner not calculated to injure those who attempt to continue to use the way, without any knowledge of such revocation, or of the barrier erected. And where the landowner stretched a barbed wire across such way, without anything to warn the traveler of its existence, he was not in discharge of the duty which he owed to the public and was guilty of negligence. *Morrow v. Sweeney*, 10 Ind. App. 626; *Carscaddon v. Mills, supra.* And so it was ruled in the cases just cited that there could be no doubt of liability, if it is shown that the obstruction is placed in the way of the licensor -purposely to keep the licensee from entering the premises.

And there are numerous cases which might be cited holding that where the owner of ground digs a pit, or erects other dangerous obstructions at a place where it is probable that persons or animals may go and become injured, without using proper care to guard the same, there is liability and the owner must respond in damages for any injury incurred by such negligence.

In view of the principles to which we have just adverted it is plain to us that under the facts which the evidence tends to establish in the present case, the defendant had the unquestioned right to put an end to the use of the bridge in question by the public, but in doing so it was bound to adopt such means and instrumentalities as were not calculated, under ordinary circumstances, to inflict injury unnecessarily. When the defendant undertook to stop the travel across the bridge and to that end removed a plank from the floor therein, it thereby made it dangerous to those likely thereafter to pass over the bridge and it thereby became the duty of the defendant to give some sort of warning of the condition there existing.

Did the defendant discharge this duty? If it did, there is no liability; and if it did not, there is.

The evidence shows that the defendant erected a barricade across the north end of the bridge on the day of the accident. When the barricade was erected the defendant had discharged its duty to the public, provided, of course, such barricade was sufficient to warn and protect travelers against the danger to be encountered by entering upon the bridge in the condition it then was. And upon principle we think that if the defendant placed a proper barricade across the approach to the bridge, and it was afterward removed by a wrongdoer, the defendant was not liable for the consequences of such removal (*Ball v. Independence*, 41 Mo. App. 469; *Dooly v. Town of Sullivan*, 11 N. W. Rep. (Ind.) 816; *Doherty v. Waltham*, 4 Gray, 596; *Mullan v. Rutland*, 55 Vt. 77; *Levister v. Mayor*, 47 N. Y. 341), unless it had notice of such removal a sufficient length of time before the deceased drove onto the bridge to have restored such barricade or placed a watchman there.

There is some evidence to the effect that the defendant's general manager and superintendent were both at, or in sight of, the bridge after the removal of the barricade by Brunnell. If they were there, as they testified, they must have seen that the barricade had been removed. There is much other evidence tending to show that the barricade had been removed an hour or more before they each testify they last saw the bridge. There is, it is true, no direct evidence that the defendant's officers and agents had notice of the removal of the barricade, but while this is so, it can not be said that there was no evidence of the existence of facts and circumstances from which the jury could have fairly inferred such notice. But it is argued that even if this be so, the removal of the plank from the floor of the bridge had no connection with the injury of which plaintiff complains. It must be conceded that the evidence, as already stated, is conflicting as to what part of the bridge the plank was removed from by the defendant's superintendent; yet there is evidence that it was removed from the south end of the bridge and that it was there that the deceased's horses took fright. It does appear that Brunnell loosely placed a narrow scantling in the place from which the plank had been removed, but it does not appear that the scantling entirely closed the opening, but, on the contrary, there seems to have been several inches of such opening left uncovered. We think, when we take into consideration the evidence tending to show the darkness prevailing when deceased drove onto the bridge, the location and character of the opening in the floor thereof, together with the strange behavior and action of the team of the deceased, we must conclude that it was sufficient to justify the jury in finding that the condition of the floor of the bridge, brought about by the agency of the

defendant, was that which caused the fright of the team of deceased and the consequent disaster. We think that the evidence was at least sufficient to entitle the plaintiff to a submission of the case to the jury.

The plaintiff's first instruction telling the jury that it was the duty of defendant to maintain the barricade for such time as would be reasonable to notify persons traveling the said road of the condition of the bridge, was, we think, a correct expression of the law, and especially when read in connection with her fourth and the defendant's fifth. The two latter told the jury, in effect, that the defendant was relieved of the duty to maintain the barricade, after the removal thereof, until it had notice of such removal. These instructions engrafted an exception on the rule declared by plaintiff's first instruction, and when they are all considered together, they were sufficiently clear and harmonious in expression to intelligently guide the minds of the jury in passing upon the issues of fact to be by them determined.

But the plaintiff's fourth and fifth instructions told the jury that if the defendant's agents, servants, and *employees* knew of the removal of the fence in time to have either replaced it, or in time to have placed a guard there, such knowledge was that of the defendant. This was error. There is no rule of law to which our attention has been called that would make the knowledge of the mere employees and servants of the defendant, engaged in building the wire fence, that the barricade had been removed, knowledge of the defendant. It may well have been that the jury understood from this instruction that the fence makers, working in the vicinity under the direction of the defendant's superintendent, knew of the removal of the barricade and that their knowledge was that of the defendant. But their knowledge, inde-

pendent of that of defendant's officers, under the instruction, would not be notice. The knowledge of the defendant's officers was sufficient to affect defendant with notice. These instructions, therefore, in requiring the jury to find that in order to constitute notice the defendant's officers and employees must have had knowledge of the removal of the barricade, in time to have restored it before the time the deceased was injured, imposed on plaintiff a greater burden than that required by the law, and was to that extent erroneous; but such error was not harmful to the defendant.

It results that the judgment must be affirmed. All concur.

## ON MOTION FOR REHEARING.

SMITH, P. J.—I. It is true that the plaintiff's fourth and fifth instructions use the words *agents, servants,* and *employees,* and that the word "officer" is nowhere to be found therein. The evidence tends to prove that the defendant's general manager and also its superintendent, the latter of whom had charge of the construction of the wire fence and the barricade under the orders of the former, had knowledge of the fact that the barricade had been thrown down prior to the time the injury happened to plaintiff's husband. The rule in reference to imputing knowledge of the agent to the principal is that which is universally adopted, confining it to knowledge acquired at a time when he was discharging the duties of his agency. *Wood v. Railroad,* 519 and 517. Notice of facts to an agent is constructive notice to the principal himself, when it arises from, or is at the time connected with, the subject of the agency. Mechem on Agency, sec. 778; Story on Agency, sec. 140; *Wheeler v. McGinn,*

86 Ala. 398; *Bank v. Levitt,* 114 Mo. 525; *Meyer v. Old,* 57 Mo. App. 525. And the principal is chargeable with all the knowledge that the agent had in the transaction of the business he had in charge. *Hyatt v. Clark,* 118 N. Y. 536. And these rules are applicable to corporations. Mechem on Agency, sec. 729.

The line of demarcation between the relation of principal and agent and that of master and servant is exceedingly difficult to define. They are essentially similar, the difference being in degree rather than kind. Mechem on Agency, sec. 2; Wharton on Agency, sec. 1; Parsons on Contracts, 101; Wood on Master and Servant, sec. 1. Nor does it appear that in our legal nomenclature the term *employee* has a greater or wider significance than that of *servant.*

While the knowledge of the fence builders, who were mere laborers, or servants and employees working under the direction of defendant's superintendent, could not, under the circumstances of the case, be imputed to defendant, yet that of the general manager and of the superintendent (if any knowledge they had) could, according to well settled rules of law, be imputed to the defendant. The instruction, therefore, which told the jury that if the agents of the defendant knew the barricade was down, this was knowledge on the part of the defendant, was proper. It does not appear that the defendant's general manager and superintendent were officers, but it does appear that they were agents of a very high degree, in charge of and directing the construction of the fence and the barricade to the approaches of the bridge. The opinion should have used the word "agents" instead of "officers" and it will be so modified, by substituting the former for the latter, wherever it therein occurs.

II. The defendant is in error in supposing the court overlooked the point suggested by it in its reply

brief; that the deceased had actual notice of the license of the public to use the road, of which the bridge was a part. We were, and are, of the opinion that the evidence was not sufficient to justify the giving of the defendant's fourth instruction. There is no evidence that the deceased knew the fence south of the bridge had been erected, or would be, on the day of the accident. And if he did, the erection of the fence across the road south of the bridge did not authorize the defendant to render the bridge unsafe and then to leave it in that condition, without a barricade, or other warning to those who should undertake to pass over it. The fence was notice of the closing up of the road at that point, but it was not notice that the bridge had been, or would be, put in an unsafe and insecure condition. It may well be doubted whether placing the barbed wire fence across the road south of the bridge was *per se* notice that the defendant had revoked the license of the public to use the bridge. The public had, to some extent, used a dim road leading south from the bridge, over the lands of defendant, lying between the wire fence and the ditch. The defendant evidently understood that the public was entitled to notice of the withdrawal of its license to use the bridge, for, if not, why did it erect the barricade?

According to the principles of law stated in the opinion, after the erection of the wire fence, the public had no strictly legal right to use the bridge and the road leading south therefrom, without trespassing, still, if it did so, the defendant could not lay an unguarded and dangerous trap in said bridge or road, without answering for the consequences, if anyone should be hurt thereby.

III. The defendant's objection that the fact in relation to the missing plank is incorrectly stated in the opinion, is not well founded. A reference to the

testimony of the witnesses Brunnell, Siecks, Devorss, Palmer, Marlowe, and Parker, to be found on pages 13, 29, 67, 81, 86, 87, 170, 279, and 286 of the defendant's abstract will show that the opinion is not subject to defendant's criticism. Motion overruled. ELLISON, J., dissents.