The State ex rel. National Ammonia Company v. Charles H. Daues et al., Judges of St. Louis Court of Appeals.—10 S. W. (2d) 931.

Division One, October 3, 1928.

*Merritt U. Hayden* and *Anderson, Gilbert & Wolfort* for relator.

*Jamison & Thomas* for respondents.

RAGLAND, J.—In this proceeding relator seeks to have quashed, on the ground of conflict with our decisions, the opinion and judgment of the St. Louis Court of Appeals in the case of Joseph S. Turley et al., respondents, v. The National Ammonia Company, a corporation, appellant, lately pending before it on appeal from the Circuit Court of the City of St. Louis. So much of the opinion as is requisite for a statement of the facts and the rulings complained of follows:

"This is an action for damages for the alleged breach by defendants of its contract to purchase two carloads of slack coal from plaintiffs. The verdict of the jury was for plaintiffs . . . and from the judgment rendered thereon defendant has appealed.

"The petition was in conventional form, reciting the making of the contract and the subsequent breach of same by defendant, together with the resulting damages.

"The answer filed by defendant thereto was a general denial.

"It was admitted that the two carloads of coal were delivered by plaintiffs to defendant on August 17, 1922, and that the same were subsequently rejected by the latter. The agreed price to be paid for the coal was $6 a ton at the loading point. It appears that at the time a strike was in progress in the coal fields, and that coal had become very scarce; so much so, in fact, that fuel was being distributed only to essential industries under the supervision of committees of the chambers of commerce throughout the land.

"The real question of fact in dispute was whether the coal in question was usable in defendant's stokers, which were a standard make of the mechanically operated chain-grate type. Upon this issue plaintiffs' evidence disclosed that the coal ordered and shipped was slack coal, containing no dirt or rock; that it was taken from the same pile from which shipments to other industries and institutions were made, and that upon its rejection by defendant the two cars were sold to the Aluminum Ore Company of East St. Louis, Illinois, who operated the same type of stokers as defendant, and by whom the coal was subsequently used without complaint.

"Defendant's evidence, to the contrary, was that the coal was a mixture of siftings from the mine, comprising only forty per cent coal and sixty per cent fire clay and other materials not usable as fuel, and that the mixture was so dense that when placed in the

stokers no draft of air could pass through it, without which it could not be burned.

"The first point urged by defendant is that its requested peremptory instruction in the nature of a demurrer to the evidence should have been given, for the alleged reason that there was no evidence that the coal in question was usuable in its stokers, without which proof plaintiffs might not recover. Suffice it to say, however, as our statement of the facts has disclosed, that there was substantial evidence *pro* and *con* upon this issue, from which it follows that the case was properly submitted to the jury.

"Defendant next argues that the court erred in admitting evidence of the strike in the coal fields and of the ending thereof. The testimony complained of was to the effect that the strike had been in progress since August 1st; that it came to an end on August 22nd or 23rd, and that, for four or five days prior thereto, it had been generally known to the trade that the strike would be terminated. Whereas the supply of coal had been meager and the price high during the existence of the strike, after its ending the market declined rapidly and most substantially. It appears that plaintiffs were not advised of the rejection of the coal in question until August 21st. The above evidence was admitted by the court solely for the purpose of showing the market conditions, and plaintiffs' contention was that the coal had been rejected by defendant, not because it was of inferior quality, but for the reason that coal could thereafter be bought at a much lower figure. Accordingly, under such circumstances and particularly in view of the decline in the market price of coal in consequence of the ending of the strike, the evidence as to the strike was admissible on the question of defendant's good faith in claiming that the coal shipped it was of inferior quality and not usable in its stokers. [Jones v. Werthan Bag Co. (Mo. Sup.), 254 S. W. 4.]"

(1) The first ruling challenged is embodied in the paragraph last quoted. It is said to be in conflict with the decisions of this court in Glencoe Land Co. v. Commission Co., 138 Mo. 439, 40 S. W. 93, and Anderson v. Public School, 122 Mo. 61, 27 S. W. 610, and in Mathias v. O'Neill, 94 Mo. 520, 6 S. W. 253, Hicks v. Railroad, 68 Mo. 329, and Newcomb v. Railroad, 182 Mo. 715. In the first two cases this principle is followed: "If the defendant committed no legal wrong, though his action resulted in damage to plaintiff, the law affords no remedy. It is *damnum absque injuria.* The motive of defendant is immaterial." In the others the court gives adherence to the general rule that evidence of collateral facts is inadmissible because it tends to draw away the minds of the jury from the point

at issue, and to excite prejudice, and mislead them, and for the further reason, the adverse party having had no notice of such course of evidence, is not prepared to rebut it. Relator says that in consonance with the decisions just referred to it had the right to reject the coal tendered, if not usable in its stokers, regardless of "what its thoughts or motives may have been," and consequently evidence of the prospective termination of the miners' strike and a resultant decline in the price of coal, and its knowledge of· these facts, was inadmissible.

It is true that the sole issue of fact was whether the coal delivered to relator under the contract of sale was usable in its stokers, and that the evidence complained of was irrelevant in the sense that it did not tend to show that the coal was, or that it was not, so usable. The Court of Appeals, however, did not uphold its admission on the ground that it had any direct bearing on the issue involved; it held the evidence admissible "as tending to show bad faith or that the defense was, in common parlance, a 'frame-up,' and as affecting the credibility of defendant's witnesses." In doing so, it followed Jones v. Bag Co., 254 S. W. 4, 11. Relator has endeavored to distinguish that case from the one under·review, but so far as we are able to perceive the two cases, on essential facts, are on all-fours. In neither was the question at issue one involving intent. Whether the ruling in Jones v. Bag Co., was sound is not for consideration in this proceeding; the Court of Appeals in the performance of its constitutional duty was bound to follow it. It may be said, however, that that ruling is not novel; it finds precedent in the decisions of eminent courts of other jurisdictions. [Penn & Co. v. Smith, 104 Ala. 445; Van Camp Packing Co. v. McGuire, 33 N. Y. Supp. 210.] The interest or bias .of witnesses with respect to the issues on trial is never an irrelevant or collateral matter. [Jablonowski v. Manufacturing Co., 279 S. W. 89-97.]

(2) Relator assigns one other ground of conflict. It says that the statement of fact found in the opinion: "the coal was subsequently used without complaint," is not supported by evidence of any probative force. The evidence from which the court drew this conclusion of fact is not set out in the opinion; its sufficiency to warrant such deductions is not referred to or ruled upon. As we have frequently said, we are limited in proceedings of this kind to the facts and the issues stated in the opinion. [State ex rel. v. Cox, 274 S. W. 373; State ex rel. v. Allen, 278 S. W. 772.] From what is said no conflict of the character indicated appears.

For the reasons herein indicated our writ should be quashed. It is so ordered. All concur.