STATE OF MISSOURI at the relation of ESTES S. GOVRO, Relator, v. JEFFERSON D. HOSTETTER, WILLIAM DEE BECKER, EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—107 S. W. (2d) 22.

Division One, June 30, 1937.

*Foristel, Mudd, Blair & Habenicht* for relator.

*William R. Schneider* for Pittsburgh Plate Glass Company.

GANTT, J.—This came to me on reassignment. Relator seeks to have quashed respondents' opinion in Govro v. Pittsburgh Plate Glass Co. The case is stated by respondents as follows:

"Plaintiff, in his action for damages for personal injuries alleged to have been sustained on August 6, 1929, and caused by the breaking of a rope while he was painting a smokestack, obtained judgment against defendant Leo G. Whittier, his employer, and the defendant Pittsburgh Plate Glass Company, who owned the stack which was being painted by plaintiff at the time he met with his injuries, and who furnished the rope that was being used at the time. The defendant Pittsburgh Plate Glass Company in due course appeals.

"The record discloses that the Pittsburgh Plate Glass Company is in the business of manufacturing glass and that as a part of its equipment it has a number of tall smokestacks which from time to time are required to be painted. In the summer of 1929 the Pittsburgh Plate Glass Company entered into a contract with the defendand Whittier to paint its smokestacks, and plaintiff was one of Whittier's employees in doing that work.

"According to plaintiff's testimony he went to work for Whitter on August 1st, and a day or two later he accompanied Whittier to the supply department of the defendant Pittsburgh Plate Glass Company, where Whittier presented an order to the clerk in charge and had issued to him a new rope to be used by plaintiff as Whittier's employee in suspending himself from the top of the smokestack for the purpose of painting it; that the rope was used for several days in the painting of the smokestacks; that every night the rope was put

away under shelter; that while plaintiff was painting, being suspended from said rope, the rope unraveled and broke a few feet from the top of the smokestack, causing plaintiff to fall some sixty or seventy feet to the top of the building below, causing him injuries.

"There is testimony that the rope was a three strand rope and that upon examination immediately after the accident two of the strands of the rope were found to be discolored and rotten, which caused the rope to break.

"Plaintiff testified that he did not know of the defective condition of the rope; that he had not paid any particular attention to it because he had been told by the clerk in the supply room that it was a new rope.

"Appellant contends that the trial court erred in giving to the jury instruction numbered one at the request of plaintiff. This instruction is plaintiff's main instruction which covers the case and directs a verdict. The point is made by appellant that the instruction nowhere requires the jury to find that the defendant Pittsburgh Plate Glass Company knew, or in the exercise of ordinary care could have discovered, that the rope was weak, defective and rotten when sold."

The question was ruled by respondents as follows:

"Respondent here in answer to appellant's criticism of plaintiff's main instruction, contends that the said instruction, when properly analyzed, does require the jury to find that the defendant Pittsburgh Plate Glass Company knew, or in the exercise of ordinary care could have discovered, that the rope was weak, defective and rotten when sold.

"Respondent admits that there is not in the instruction an express requirement in distinct and direct terms, that the jury must find that the defendant had knowledge of the defective condition of the rope; but respondent contends that this was not necessary, 'for to charge that the rope was defective in a stated manner, and that the defendant was negligent in furnishing a rope in that condition, sufficiently implies the knowledge required.' Under the record in this case this contention will not avail respondent.

"It is true the instruction did require the jury to find that the said defendant furnished the rope knowing that it was to be used by plaintiff in the manner he actually did make use of it, and that the rope so furnished was defective and for that reason was dangerous and not reasonably safe for such use, and required the jury in addition to find that in so furnishing said rope defendant was negligent, and that the breaking of the rope and the fall and resulting injury to plaintiff directly resulted from said negligence. If the jury, in compliance with the instruction, found and believed from the evidence the facts set up as a prerequisite to a verdict for plaintiff,

such finding of facts would not necessarily imply a finding as a fact that defendant knew, or by the exercise of ordinary care would have known, that the rope was defective, yet in order to find that the defendant was guilty of negligence in delivering to plaintiff a rope that was rotten, and, therefore, dangerous, it was necessary that the jury find not only that such rotten condition existed in the rope, but that the defendant either knew thereof or could have discovered the same by the exercise of ordinary care on its part. [Walling v. Mo. Stair Co. (Mo. App.), 227 S. W. 879; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S. W. (2d) 122, l. c. 124, 126; Heizer v. Mfg. Co., 110 Mo. 605, 19 S. W. 630; Wojtylak v. Coal Co., 188 Mo. 260, 87 S. W. 506, l. c. 511-512; Howard v. Railroad Co., 173 Mo. 524, l. c. 530, 73 S. W. 469; Removich v. Const. Co., 264 Mo. 43, 173 S. W. 686, l. c. 688-689.] . . .

"In considering the alleged error in the instruction before us on this appeal, it must be remembered that the rope furnished by defendant for plaintiff's use was not inherently dangerous and that the defendant was not to be held as though it was an insurer of the soundness of the rope but that the defendant was required merely to exercise ordinary care to furnish a sound rope, yet, under this instruction the jury could well have believed that the defendant was bound, at all events, to furnish plaintiff a sound rope and in that belief returned a verdict for plaintiff, though they believed that the defect in the rope was latent and such as could not have been discoverable by the exercise of ordinary care. In this situation we are of the view that plaintiff's main instruction failed to require the jury to find, as one of the essential facts prerequisite for a verdict for plaintiff, that defendant knew, or by the exercise of ordinary care would have known, of the defect in the rope and that the facts in the instruction hypothesized as necessary to a verdict were not such that the finding of such facts would necessarily include a finding that the defendant knew, or by the exercise of ordinary care would have known of the defect in the rope."

 I. Relator contends that the ruling on the question is in conflict with decisions of this court as follows: Hulsey v. Quarry & Const. Co., 326 Mo. 194, l. c. 213, 30 S. W. (2d) 1018; Kamer v. Railroad Co., 326 Mo. 792, l. c. 805, 32 S. W. (2d) 1075; Midway B. & T. Co. v. Davis, 288 Mo. 563, l. c. 577, 233 S. W. 406; Berberet v. Amusement Co., 319 Mo. 275, l. c. 279, 3 S. W. (2d) 1027; Simmons v. Jockey Club, 334 Mo. 99, l. c. 109, 66 S. W. (2d) 123; Felver v. Railroad, 216 Mo. 195, l. c. 207, 115 S. W. 980.

The Hulsey and Kamer cases ruled that an instruction requiring a finding that defendant "failed to exercise ordinary care and was negligent" was equivalent to a requirement that the jury find that defendant knew, or, by the exercise of ordinary care, could have

known of the conditions causing the injury. The cases are master and servant cases. In such relationship the duty of inspection as to appliances and conditions is upon the master. ▮ The instant case is not a master and servant case. Relator cites no decision of this court holding that in a case similar to the instant case substitution may be made for an express direction requiring the jury to find that defendant knew, or, by the exercise of ordinary care could have known of conditions.

The Midway and Berberet cases ruled that the allegation of negligence in the petition was equivalent to an allegation that defendant knew, or, by the exercise of ordinary care could have known conditions. Petitions are addressed to the court (Lewis v. Railroad Co., 50 S. W. (2d) 122, 125), and instructions are addressed to the jury. The cases do not rule the question here presented.

In the Simmons case a horse ridden by plaintiff in a race "bolted" through an open gate in the fence, causing plaintiff to be thrown and injured. In that case defendant challenged the instruction because it did not require a finding that defendant knew, or, by the exercise of ordinary care, could have known that the gate was open. The instruction did require the jury to find that defendant negligently failed to keep the gate closed during the race. We ruled that defendant could not have negligently failed to keep the gate closed unless it knew, or, by the exercise of due care, could have known the gate was open. We so ruled because the gate was under the control of defendant. It should have closed same before starting the race. The gate was in the keeping of defendant, and we also ruled that, absent evidence on the question, the inference would be that the keeper opened the gate.

The Felver case only approved the definition of negligence as the failure to use ordinary care.

▮ II. Relator next contends that respondents' opinion is in conflict with Section 1062, Revised Statutes 1929, and decisions of this court construing said section. There is no basis for this contention. The question was neither considered nor mentioned in respondents' opinion. We are limited to facts and issues stated in said opinion. [State ex rel. National Ammonia Co. v. Daues, 320 Mo. 1234, 10 S. W. (2d) 931.]

There is no conflict and the writ should be quashed. It is so ordered. All concur, except *Douglas, J.*, not voting because not a member of the court when cause was submitted.