Lillian HARTMANN (Plaintiff), Respondent,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Corporation (Defendant),
Appellant.

No. 29063.

St. Louis Court of Appeals.

Missouri.

June 14, 1955.

James L. Homire, C. H. Skinker, Jr., W. W. Dalton, and Laurance M. Hyde, Jr., St. Louis, for appellant.

Stewart D. Flanagan, E. D. Franey, and Hay & Flanagan, St. Louis, for respondent.

## MATTHES, Judge.

The defendant appeals from a judgment following a verdict in favor of plaintiff in the sum of $3,000 for personal injuries she sustained as the result of the automobile in which she was riding being brought to a sudden stop while it was attempting to pass over an alleged defective railroad crossing.

In her petition plaintiff alleged, and it was admitted by defendant in its answer, that Stahl Road was, on August 16, 1951, (date plaintiff was injured), an open public road in Jefferson County, Missouri, and that said road crossed the railroad track of the defendant in said county. It was further alleged in the petition, and denied by defendant, that on said date the railroad crossing was rendered dangerous and unsafe for persons driving and riding in automobiles on said road and crossing said track by reason of the negligence of the defendant in the following respects: (a) in raising the west rail of the track above the level of Stahl Road when defendant knew, or by the exercise of ordinary care would have known, that persons riding in an automobile along and upon said road and across said track would be "apt" to be injured; (b) that after raising the west rail of the track above the level of the road, defendant failed to fill in on both sides of the rail so as to make the crossing level; (c) the defendant failed to warn the driver of the automobile in which plaintiff was riding of the dangerous condition of the crossing.

The sufficiency of the evidence to make a case for the jury is not questioned here, but rather defendant complains only of the action of the trial court in the giving of instruction No. 1 offered by plaintiff, and in refusing to give instruction C offered by the defendant.

Since concededly the evidence presented a jury question, a brief statement of the facts will suffice.

Plaintiff, sixty years old at the time of the trial, was the wife of Charles Hartmann. They resided in St. Louis, Missouri, but owned a summer place in Jefferson County, Missouri, located on Stahl Road and west of U. S. Highway 61–67 and the railroad track, the latter being between the highway and the Hartmann property. The highway extended generally in a north and south direction through said county and Stahl Road in an east and west direction.

In order to go from Highway 61–67 to the Hartmann property it was necessary to travel Stahl Road in a westwardly direction and to cross the railroad track of the defendant. It was established by undisputed evidence, oral testimony, as well as a photograph of the crossing, that immediately west of the track there was a rather sharp decline in Stahl Road so that westbound traffic thereon would travel downgrade after leaving the crossing. Conversely eastbound vehicles were required to travel up the grade before crossing the rails.

According to testimony, the top of the crossing was 6 or 7 feet higher than the road to the west thereof, and the incline or upgrade extended a distance of 10 or 12 feet.

On the morning of August 16, 1951, Charles Hartmann drove his 1937 Dodge automobile, with plaintiff riding therein, in a westwardly direction over Stahl Road. Since their property was west of the railroad track, Hartmann was required to drive the automobile over the crossing. At that time they observed men working on the crossing putting dirt and gravel over the boards or ties between the rails. No difficulty was experienced in crossing over the rails at that time. Some time after the noon hour of the same day, plaintiff and her husband were proceeding eastwardly, that is, away from their property, over the same road, and in the Dodge automobile. Mr. Hartmann testified that, according to custom, he stopped the automobile some distance west of the crossing and at the bottom of the incline, "to listen for a train and also put the car in low gear". He then proceeded eastwardly in low gear at a speed of "between five and ten miles per hour, something like that I should judge". When the automobile reached the place where the rails were crossed, "the car bumped the railroad track and went over, and there was a sudden jolt there, and the jolt was so hard that the door flew open." * * * "The bottom of the car" hit the rail as it went over. When the front wheels stopped they had almost reached the east rail. The boards or ties that were between the rails in the morning, according to the testimony of Hartmann, had been removed and there was nothing between the rails other than the ordinary roadbed.

Hartmann further testified that his automobile was far from a "rattle-trap" (apparently so described by defendant's counsel in opening statement), as he always kept it in tiptop shape.

Immediately following the sudden stopping event, members of the section crew who had been sitting in the shade of a tree as the vehicle approached the crossing, appeared and assisted in pushing the vehicle backward off the crossing and down the grade. Then, in the language of Hartmann, "for about fifteen minutes all six men throwed dirt and everything between the track and alongside the track where it runs over so that I could get over the track". Thereafter, the automobile was able to and did cross over the track at the crossing without difficulty. Hartmann testified further that Mr. Parker, foreman of the section crew, told him he had "just raised the track two and three-quarter inches" * * * Mr. Parker, testifying for defendant, admitted that the west rail had been raised an inch and a half, and he and another employee emphasized that the crossing had been fully repaired, including the filling in between the rails, prior to the time the Hartmann automobile attempted to cross going eastwardly.

Other pertinent testimony will be noted in disposing of the points here presented by defendant.

The verdict directing instruction assailed by defendant is as follows:

"The Court instructs the jury that if you find and believe from the evidence that on or about the 16th day of August, 1951, the defendant, St. Louis-San Francisco Railway Company, maintained its railroad track across Stahl Road, a public road in Jefferson County, Missouri, and that on said date defendant raised the west rail of said track where it crossed Stahl Road, and that after doing so, if you so find, defendant failed to fill in on both sides of said rail at said crossing and that by reason of said failure, if you find defendant did so fail, said rail extended above the roadway of Stahl Road several inches, if you so find, and if you find and believe from the evidence that by reason thereof, if you so find, said crossing was not reasonably safe for ordinary use by automobiles and that persons driving or riding in automobiles crossing said track were liable to be injured by reason of said condition, if any, and if you further

find and believe from the evidence that thereafter plaintiff's husband was driving an automobile with plaintiff therein, eastwardly along and upon Stahl Road towards said crossing, and that as plaintiff's husband attempted to drive said automobile across defendant's track, the underpart thereof struck the west rail of defendant's track and caused said automobile to come to a sudden stop, and that as a direct result thereof plaintiff was injured, and if you further find and believe from the evidence that as plaintiff's husband was driving his automobile eastwardly along and upon Stahl Road toward said crossing and before he reached said crossing defendant by the exercise of ordinary care could have warned plaintiff's husband of the aforesaid condition of said crossing, if you find it was in said condition, but failed to do so, and that in failing to fill in on both sides of said rail, as aforesaid, if you find defendant did so fail, and in failing to warn plaintiff, as aforesaid, if you find defendant did so fail, defendant failed to exercise ordinary care and was negligent, and that plaintiff's injuries, if any, were the direct result of said negligence, if any, and that on said occasion plaintiff was in the exercise of ordinary care for her own safety, then your verdict should be in favor of plaintiff and against defendant."

In this court defendant urges its rights were prejudiced because the instruction authorized "a verdict for plaintiff without requiring a finding that defendant had actual or constructive notice of the alleged dangerous condition of the crossing; or that defendant had actual or constructive notice that failure to warn plaintiff of the condition might result in injury to plaintiff, * * *".

■ A serious question exists as to whether the point here presented with respect to instruction No. 1 conforms to the assignments presented to the trial court in its motion for new trial. In said motion no general assignment of error as to instruction No. 1 was included, the defendant electing to rely upon eight specific objections to the instruction. When specific assignments of error are set out in the motion for new trial, the assignments or points on appeal must conform thereto; points attempted to be raised in this court the first time are not subject to review. Sterrett v. Metropolitan Street Ry. Co., 225 Mo. 99, 123 S.W. 877; Newkirk v. City of Tipton, 234 Mo.App. 920, 136 S.W.2d 147; White v. St. Louis Public Service Co., Mo. Sup., 259 S.W.2d 795; Block v. Rackers, Mo.Sup., 256 S.W.2d 760. However, since we have concluded that instruction No. 1 was not erroneous, we shall consider the point here raised as though it was properly presented to the trial court.

■ It is quite obvious that the instruction did not, as a prerequisite to a recovery by plaintiff, expressly require a finding that defendant had knowledge of the condition of the crossing as it existed when the automobile attempted to negotiate it. Neither did it require that the jury find that defendant had actual or constructive notice that failure to warn plaintiff of the condition might result in injury to plaintiff. The condition of the crossing, dangerous or safe, was concededly created by defendant as a direct result of an attempt to repair the same. That being true, according to sound principles, the defendant was charged with knowledge of the condition. Armstrong v. Kroger Grocery & Baking Co., Mo.App., 78 S.W.2d 564, loc. cit. 570; Murphy v. Fidelity Nat. Bank & Trust Co., 226 Mo.App 1181, 49 S.W.2d 668; Wood v. Walgreen Drug Stores, Mo.App., 125 S.W.2d 534; Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 161 S.W.2d 258; 65 C.J.S., Negligence, § 5, page 354; Shearman and Redfield on Negligence, Volume One, Page 48, Section 21. See, also, Niedner v. Wabash R. Co., Mo.App., 219 S.W.2d 886, loc. cit. 890, a case wherein plaintiff recovered damages for personal injuries because of improper maintenance of a railroad crossing.

While not disputing the principle announced in said authorities the defendant

nevertheless insists the rule has no application in the instant case because the condition of the crossing did not present an inherently dangerous situation. Therefore it is argued that the question is not whether the instruction should have required a finding that defendant knew of the condition of the crossing, but rather that the instruction failed to require a finding that the condition, whatever it may have been, was likely to cause injury to plaintiff. In its reply brief defendant urges that the instruction should have required the jury to find that the defendant had actual or constructive knowledge that the crossing was in a dangerous condition.

A careful analysis of instruction No. 1 compels the conclusion that it is not vulnerable to the attack made by defendant. It will be noted that before plaintiff was entitled to recover, the jury had to find these essential elements existed: (1) defendant raised the west rail of the track where it crossed Stahl Road; (2) after so doing defendant failed to fill in on both sides of the rail at the crossing; (3) by reason of said failure the said rail extended above the roadway of Stahl Road several inches; (4) by reason thereof *said crossing was not reasonably safe for ordinary use by automobiles,* and that persons driving or riding in automobiles crossing said track were liable to be injured by reason of said condition. (Emphasis ours.) In the concluding portion of the instruction the jury was also required to find that the failure of defendant to warn plaintiff's husband of the condition of the crossing, and the failure to fill in on both sides of the rail, constituted negligence on the part of the defendant, and that such negligence was the direct and proximate cause of plaintiff's injuries.

■ It is well settled that when a railroad crosses a public road, there is a duty upon the railroad company, not only to construct the crossing in accordance with the provisions of Section 389.610 RSMo 1949, V.A.M.S., but also to maintain it in a condition that makes it reasonably safe for travel. Patterson v. Thompson, Mo.App., 277 S.W.2d 314, loc. cit. 317; McGrew v. Thompson, 353 Mo. 856, 184 S.W.2d 994; Niedner v. Wabash R. Co., supra. And liability for nonperformance as to maintenance is governed by the ordinary rules of negligence. Patterson v. Thompson, supra.

■ Now if the crossing was not reasonably safe for ordinary use by automobiles, and persons riding therein were liable to be injured because of such condition, which the jury had to find, the defendant failed to discharge the duty imposed upon it with respect to maintenance of the crossing. And since the unsafe crossing was created by the defendant, it inevitably follows that knowledge of that condition was present. Having notice in fact that the crossing was not reasonably safe for ordinary use by automobiles, no sound reason appears why the instruction should have required the jury to find that defendant possessed such knowledge. See Page v. City of Fayette, 233 Mo.App. 37, 116 S.W.2d 578, loc. cit. 582.

■■ The railroad crossing was for the use of the public generally so that plaintiff had the right to be upon the premises of the defendant where she was when injured. And the record establishes that defendant knew the automobile in which plaintiff was riding was approaching the crossing which had been rendered unsafe by defendant. In this situation there was a duty upon defendant to warn of said unsafe condition. 65 C.J.S., Negligence, § 89, page 599, note 54; Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410, loc. cit. 415; Long v. F. W. Woolworth Co., Mo.Sup., 159 S.W.2d 619; Wheeler v. St. Joseph Stock Yards & Terminal Company, 66 Mo.App. 260, loc. cit. 269. Especially is that true since there was no showing that plaintff had knowledge of the defective crossing. Being under duty to warn, the defendant is in no position to claim error because the instruction did not also require the jury to find that "defendant had actual or constructive notice that failure to warn plaintiff of the condition might result in injury to plaintiff".

.- The factual situation in the instant case distinguishes it from those relied upon by defendant, viz.: Stakelback v. Neff, Mo. App., 13 S.W.2d 575; Devoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66; Greenwood v. Bridgeways, Inc., Mo. App., 243 S.W.2d 111; and Rayburn v. Fricke, Mo.App., 243 S.W.2d 768. All of these cases dealt with collisions between motor vehicles. In each instance the main instruction was found erroneous by this court under the particular facts involved, the substance of the ruling in those cases being that instructions authorizing recovery because of the negligence of the defendant in failing to take precautionary measures to prevent the collision, had to also require a finding that defendant had reason to believe that a collision would occur unless he took steps to avoid it. The defendant also relies upon State ex rel. Govro v. Hostetter, 341 Mo. 262, 107 S.W.2d 22, in which the Supreme Court refused to quash the opinion of this court in Govro v. Pittsburgh Plate Glass Co., Mo.App., 91 S.W.2d 641. This court ruled that the verdict directing instruction was fatally erroneous because it failed to require a finding that the defendant had knowledge that the rope it furnished plaintiff was defective. The distinguishing feature of that case is, no showing was made that the defendant did anything to produce the defect in the rope which caused it to break. In fact it was said in the opinion overruling motion for rehearing, 91 S.W.2d loc. cit. 646: "Here we are dealing with a rope not manufactured by defendant, an article not inherently dangerous, and concededly a new rope."

We have concluded that instruction No. 1 required the jury to find, before plaintiff was entitled to a verdict, all of the essential elements in a case of this kind. Therefore the rights of defendant were not prejudiced because the instruction did not go further and also require a finding that the defendant had notice, actual or constructive, that: (1) the crossing was in a dangerous condition and likely to produce injury; and (2) that failure to warn of the condition might result in injury to plaintiff.

Refused instruction C would have authorized the jury to exonerate defendant upon a finding that "the under-part of the automobile driven by plaintiff's husband * * * struck the west rail of defendant's track because of a defect in the automobile, *or* in the manner in which it was being operated". (Italics ours.) It will be noted this instruction was drawn in the disjunctive. Therefore it was essential that each of the grounds submitted as the basis for a verdict defeating plaintiff's cause of action was supported by evidence. Whitehead.v. Fogelman, Mo.App., 44 S.W. 2d 261, loc. cit. 263; Carlisle v. Tilghmon, Mo.Sup., 159 S.W.2d 663; Martin v. Springfield City Water Co., Mo.App., 128 S.W.2d 674; Wolf v. Kansas City Tire & Service Co., Mo.App., 257 S.W.2d 408; Alwood v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 868.

It is unnecessary for us to decide whether the evidence was sufficient to justify the submission of the question of a defect in the automobile as the cause of the same striking the rail. This for the reason that there was a total failure of proof with respect to the other alternative submitted in the instruction. Defendant relies upon testimony given by three witnesses as the basis of proof that the automobile came in contact with the rail because of the manner in which it was being driven. One of defendant's witnesses related that after Hartmann stopped the vehicle, he went up the hill toward the crossing "* * * around ten miles an hour, the way he shot that thing in gear". Another of defendant's witnesses testified that after Hartmann stopped, * * * he took off to go up over the crossing, his wheels was spinning". A witness testifying by deposition in behalf of plaintiff related that as the automobile went up the hill, it bounced and bucked a little bit. This witness further testified that Hartmann's automobile "* * * always rides bumpy, as far as that goes". Defendant urges that the testimony just noted was sufficient to justify submission to the jury of the question of improper operation of the automobile as the cause of

the sudden stopping. It was undisputed that the incline leading to the crossing from the west was sharp, in the words of some witnesses, "pretty steep", "very steep". Likewise every one agreed that the road was rather rough. Under these circumstances the spinning of the wheels as the vehicle went up the incline over the rough road was no proof of careless operation of the automobile. Neither can it be said that 10 miles per hour was excessive and constituted reckless or improper driving thereof.

Furthermore, as will be noted, the instruction hypothesized no facts from which the jury could have found that the collision of the automobile with the rail resulted from improper operation thereof. Drawn as it was, the jury would have been given a roving commission to speculate that the automobile struck the rail because of some manner, unspecified in any respect, in which it was operated. Consult Pulse v. Jones, Mo.Sup., 218 S.W.2d 553; Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, loc. cit. 856, in which instructions hypothesizing more facts than appear in refused instruction C were held erroneous as giving the jury a roving commission.

If instruction C had been given, the jury, in the language of Judge Conkling in the Pulse case, 218 S.W.2d loc. cit. 556, would have been " * * * commissioned to search not only the testimony but their own imagination as well, to find anything the jury might conjure up and conceive * * *." to be improper operation of the automobile in which plaintiff was riding.

Finding no reversible error, the judgment should be affirmed, and it is so ordered.

SAM C. BLAIR, Special Judge, concurs.

FRANKLIN FERRISS, Special Judge (concurring).

I concur in the result of the majority opinion, and I agree with most of the opinion. However, my reasons for holding that instruction No. 1 was not erroneous are sufficiently at variance with the majority

view to warrant a separate statement thereof.

The majority opinion fails to recognize the distinction between (1) a finding that the defendant had actual or constructive knowledge of certain physical conditions, which in this case consisted of a rail raised at least two inches above a rough country road; (2) a finding that said raised rail rendered the crossing unsafe for ordinary use by automobiles; and (3) a finding that the defendant knew or should have known (i. e., prior to the accident) that the raised rail rendered the crossing unsafe for ordinary use by automobiles. As the majority opinion points out, plaintiff's instruction No. 1 required the jury to find that the crossing was not reasonably safe for ordinary use. The opinion goes on to state: "since the unsafe crossing was created by the defendant, it inevitably follows that knowledge of that condition was present. Having notice *in fact* that the crossing was not reasonably safe for ordinary use by automobiles, no sound reason appears why the instruction should have required the jury to find that the defendant possessed such knowledge" (Emphasis added).

The only thing that "inevitably" follows from the fact that defendant raised the rail is that defendant had actual or constructive knowledge that the rail was thus raised. *If* the raised position of the rail had been such an obviously dangerous hazard that reasonable minds could not disagree about its being a danger to ordinary use by automobiles, this Court would, I believe, hold that on that account the defendant had at least constructive knowledge that the crossing was unsafe. Brown v. Reorganization Investment Co., 350 Mo. 407, 166 S.W.2d 476. But the danger posed by this raised rail was not that obvious, and the majority opinion does not so regard it. I conclude that it was for the jury to decide whether or not the defendant had knowledge, actual or constructive, of the unsafe condition of the crossing.

However, it does not follow from this conclusion that instruction No. 1 was erroneous. Many instructions have been held

good on the ground that a finding that a defendant negligently caused or permitted an unsafe described condition is equivalent to a finding that the defendant knew or should have known that said unsafe condition existed. Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S.W.2d 408, 418; Hulsey v. Tower Grove Quarry & Construction Co., 326 Mo. 194, 30 S.W.2d 1018, 1028; Kamer v. Missouri-Kansas-Texas R. Co., 326 Mo. 792, 32 S.W.2d 1075, 1082. Defendant's able counsel insists that these authorities have been carefully distinguished in State ex rel. Govro v. Hostetter, 341 Mo. 262, 107 S.W.2d 22, on the ground that they are master and servant cases where the duty of inspection as to appliances and conditions is upon the master.[1] This is true, but the argument overlooks the fact that both at common law and by statute, RSMo 1949, Section 389.610, railroads have a duty wherever their tracks cross public streets or highways, to exercise ordinary care to maintain their crossings in a condition which makes them reasonably safe for travel, or in other words, to ascertain and repair defects therein. Patterson v. Thompson, Mo.App., 277 S.W.2d 314, 317; Lee v. St. Louis & S. F. R. Co., 150 Mo. App. 175, 181, 129 S.W. 773; Nixon v. Hannibal & St. Joseph R. Co., 141 Mo. 425, 437, 42 S.W. 942. This duty which railroads owe to those crossing their tracks is so similar to the duty which masters owe to their servants that the rule of substitution applied in Messing v. Judge & Dolph Drug Co., supra, and in the other cases cited to the same effect, should be applied in railroad crossing maintenance cases.

In the case at bar plaintiff's instruction No. 1 required a finding "that in failing to fill in on both sides of said rail * * * and in failing to warn plaintiff * * * defendant failed to exercise ordinary care and was negligent." Applying the rule of Messing v. Judge & Dolph Drug Co.,

supra, this finding was equivalent to a finding that defendant knew, or by the exercise of ordinary care could have known, of the unsafe condition of the crossing. No express finding to that effect was therefore necessary.

---

[1] A fuller statement of the master's duty may be found in Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S.W. 764, 770, where the Supreme Court stated: "he [the master] must also, by inspection from time to time, and by the use of ordinary care and diligence, keep the servant's place of work in a reasonably safe condition."