THE CITY OF HIGGINSVILLE, MISSOURI, EX REL., KASCO, INCORPORATED, A CORPORATION, RESPONDENT, v. THE ALTON RAILROAD COMPANY, A CORPORATION, ET AL., APPELLANTS.—171 S. W. (2d) 795.

Kansas City Court of Appeals. May 3, 1943.

Henry C. Chiles and Charles M. Miller for appellant.

1208

*Cornelius Roach, Daniel L. Brenner* and *Ike Skelton* for respondent.

BLAND, J.—This is an action in two counts, each on a special tax bill issued by the City of Higginsville. There was a verdict and judgment against the defendants establishing a lien on the land against which the tax bills were issued, together with a personal judg-

ment, aggregating the sum of $1515.35, against the defendant, the Kansas City, St. Louis & Chicago Railroad Company (hereinafter called the defendant). Defendant has appealed.

The original tax bills issued by the City on the 13th day of December, 1928, were made out to Ernest Vermillion. They were issued in part payment for the paving and curbing of Blackstone and Boggs streets, a continuous thoroughfare in the City of Higginsville. The bills were later sold to Kasco, Inc., a corporation, at the relation of which this suit is brought.

The facts show that defendant acquired, by deeds from the owners of the fee, easements over the ground against which the tax bills in controversy were issued. There is no evidence that defendant ever operated a railroad, or that it ever conveyed the easements, but the inference to be drawn from the evidence is that, at the time of the issuance of the original tax bills in 1928, the Receiver of the Chicago & Alton Railroad Company, was operating a railroad over the land in question, under a lease or leases.

The evidence shows that the Chicago & Alton Railroad Company, during the years 1922 to 1931, was in the hands of a receiver; that on March 3, 1931, all of the property of that company, including the leases in question, was conveyed, by a special master's deed, made pursuant to a sale under the receivership, to the defendant, the Alton Railroad Company, for the stated consideration of $23,000, subject to a mortgage, in which the Illinois Trust and Savings Bank, was the trustee.

The proceedings for the paving and curbing in question were begun by a resolution passed by the Board of Aldermen of the City of Higginsville, on July 9, 1928. This resolution and, also, the ordinance providing for the work, stipulated that the paving should be of concrete and with a "width of center line roadway of 24 feet from face to face of curb"; that "From the above described work there shall be excluded the paving of the five tracks of the C. & A. Railroad where they now cross the roadway, which space is maintained by the said railroad company as provided by law"; that the space excluded was the distance between the tracks and two feet on the outside of the outside rails of the outside tracks. (The total distance excluded was sixty-five feet.) The resolution, the ordinance, and the other ordinances passed by the Board of Aldermen concerning the work and for the issuance of tax bills therefor, all described the improvement to be made upon the roadway along the center line of "Blackstone Street and Boggs Street (a continuous thoroughfare), from the northwesterly line of Main Street to the South line of Green Street in the City of Higginsville." The evidence shows that Blackstone and Boggs streets run, generally, in a north and south direction and the railroad right-of-way, generally, in an east and west direction at the place in controversy.

It seems to be admitted that Blackstone and Boggs streets are regularly established streets in the City of Higginsville; that, as established streets, Boggs Street ends at the north line of the railroad right-of-way and Blackstone Street at the south line thereof. However, it appears that the ends of the two streets, as regularly established, are nearly opposite each other and that, for a period of fifty-four years, the public has used the right-of-way between the ends of these established streets for the purpose of travel to and from them and, since the year 1912, the Chicago & Alton Railroad Company, its operators and successor, have maintained the crossing on the right-of-way for public use from the north right-of-way line to the south right-of-way line and that, at least as far back as 1918, had maintained the crossing, at the tracks, and the approaches thereto, in the usual manner.

The improvement extended for a distance of eight blocks, one block lying north of the right-of-way. The pavement was laid across the right-of-way, except that part lying between the five railroad tracks present and two feet on the outside of the outside rail on each side of the tracks. As before stated, this omitted distance was sixty-five feet. The pavement, along its center line, extends on the right-of-way, a distance south of the tracks, approximately fifty-six feet and north of the tracks approximately thirty-six feet.

On the 3rd day of December, 1928, the Board of Aldermen passed Ordinance No. 396, entitled: "An Ordinance Accepting and Approving the Report of the completion of the" work "improving the roadways of Blackstone and Boggs streets (a continuous thoroughfare)", etc., and "approving the computation and apportionment of the cost thereof and levying special assessment to pay the cost of said work". The ordinance recites that the report of the City Engineer, showing the completion of the work, etc., and "the computation of the cost of said work and the apportionment thereof against the respective lots and tracts of land chargeable therewith as provided for in the resolutions an ordinance for said work is hereby approved and said work is hereby accepted"; that "special assessments are hereby levied against the tracks of land described in said report for the respective amounts set forth therein and said report is attached to this ordinance and made a part hereof" and directs the City Clerk to deliver to the contractor special tax bills bearing interest at the rate of six per cent per annum, after thirty days from the date of the issuance thereof.

The report of the engineer, contained in the ordinance, recites that the work had been fully completed by the contractor in accordance with his contract, and that the engineer had computed the cost thereof, as provided for in the resolutions and ordinances for the work, "and the apportionment thereof against the lots and tracts of land chargeable therewith, according to the frontage as provided by law," and that the "following is a final computation of the cost of the project

herein set forth, together with a description of each tract of land, and the amount with which it is chargeable.''

Then appears an itemized statement of the cost of the work, which aggregated $22,755.50. The numbers of the lots and the tracts of land and their owners are described in the report. The description of each of said lots and tracts of land contains the frontage in feet upon the improvement and the amount assessed against each lot or tract assessed, except as to the railroad right-of-way. The part of the right-of-way assessed is described as ''East side Chicago & Alton R. R. Co. (This is assessed) $560.53.'' The number of feet of the railroad right-of-way fronting upon the improvement and the name of the owner thereof is omitted. The same is true of the improvement on the west side of the tracks, which is merely described as ''West Side Chicago & Alton R. R. Co., — feet $314.12.''

The tax bills that were issued, pursuant to this ordinance, were numbered 22 and 24. They were dated December 13, 1928. No. 22 recited that it was issued against land ''described as the East Side of Boggs Street, Higginsville, Missouri, Block One (1) Asbury's Addition, . . . owned by the Chicago & Alton Railroad Company,'' and that the property had been duly assessed and charged the sum of $560.53, as a special tax.

No. 24 describes the property assessed as ''West side of Boggs Street, Higginsville, Missouri, Block Two (2), Asbury's Addition, . . . owned by the Chicago & Alton Railroad Company,'' and states that the property had been assessed and charged the sum of $312.14, as a special tax.

It was admitted at the trial that the description of the assessed property, contained in these two tax bills, was too indefinite to constitute a proper description.

On November 20, 1933, the Board of Aldermen enacted Ordinance No. 529, purporting to be for the purpose of correcting the description of the ''assessment of two tracts of land owned by the *Alton Railroad Company*,'' (Italics ours) in the original tax bills Nos. 22 and 24. The ordinance recites that said two tracts of land owned by the Alton Railroad Company were ''described indefinitely and defectively'' in Ordinance No. 396 and in the tax bills, and the Kasco, Incorporated, a corporation, the owner and holder of the bills had requested new tax bills be issued on the surrender of the original ones.

The ordinance recites that the land was *owned by the Alton Railroad Company* and that the ''amount of $560.53, being the amount assessed by said Ordinance No. 396, against a tract of land described'' therein ''be and the same is hereby assessed against the following tract of land.'' Here follows quite a lengthy description delineating a tract of land. The description follows the right-of-way on its north and south line and the east line of ''Blackstone-Boggs Streets'', and the west line of Russell Street, the first intersecting street to the East of

"Boggs-Blackstone Streets." The ordinance then recites that "the amount of $314.12, assessed by said Ordinance No. 396, against a tract of land described" therein "be and the same is hereby assessed against the following described tract of land, *owned by the Chicago and Alton Railroad Company,* (Italics ours). 'A tract of land on the west side of Blackstone-Boggs street fronting on said street," describing it by following the lines of the north and south boundaries of the right-of-way, and the west side of Blackstone-Boggs streets and the east side of Brand Street to the west. The ordinance provides that the new tax bills bear interest at the rate of six per cent per annum from December 13, 1928, the date of the issuance of the original tax bills.

The amended tax bill No. 22, the one sued upon, was issued as a result of the enactment of Ordinance No. 529. It contains the same description of the land assessed as that contained in the ordinance, the land being described as being owned by the "Alton Railroad Company." The bill recites that the company had been duly assessed and charged the sum of $560.53 as special tax for improving Blackstone and Boggs streets (a continuous thoroughfare). Amended tax bill No. 24, the other one sued upon, was issued for $314.12 and assessed as a special tax against land, describing the same as a tract of land as that contained in the ordinance and as being owned by the "Alton Railroad Company." The tax bills, by their terms, bore interest at the rate of six per cent per annum thirty days after December 13, 1928.

The amended tax bills were signed by Ralph Huscher, as Mayor, but the original tax bills were signed by W. M. McLain, as Mayor. The evidence shows that at all of the times involved herein the railroad was popularly known as the "Alton Railroad", although, technically, a corporation of that name did not come into existence until January 5, 1931.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason, among others, that it was not named as the owner of the land assessed in the amended tax bills that were issued or in any of the proceedings. Defendant says that, in any event, the court erred in rendering a money judgment against it. In support of its contentions defendant cites Associated Holding Co. v. W. B. Kelley, 90 S. W. (2d) 419. That case had to do with the issuance of a tax bill by the City of St. Joseph, under sections 6294 and 6298, Revised Statutes Missouri 1929 (now sections 6416 and 6421, R. S. Mo. 1939), which relate to street improvements, and the issuance of tax bills therefor, in cities of the first class. Under that statute a tax bill is not issued against property but merely against the city, generally. It was held, in that case, that the tax bill was void because the city was not named in the tax bill. However, that statute has nothing to do with improvements by a city of the fourth class, such as the City of Higginsville, but such is governed by Articles 9 and 11 of Chapter 38, Revised Statutes Missouri 1939. There is no conten-

tion that a personal judgment was not proper if defendant had been named as the owner of the land assessed in the amended tax bills, if other conditions, hereinafter to be mentioned, were present.

Section 7367, Revised Statutes 1939, appearing in Article 11 of Chapter 38, relating to the issuance of tax bills by cities, generally, provides that all real property, including rights of way, etc., situated in cities, towns and villages, of any railroad company owning or operating a railroad within the corporate limits of such city, town or village, shall be subject to special assessments made by such city, town or village, in the same manner and to the same extent, and in all respects as to real property of any other person or corporation therein. "And all laws . . . for the making, enforcement and collection of such special assessment against the real property of other persons and corporations in such city, town or village, shall apply to and govern the making, collection and enforcement of such special assessments against such real property of any such railroad company in the same manner and to the same extent as to such special assessments against the real property of other persons and corporations therein." (Notwithstanding this statute it is against public policy to permit the foreclosure of any part of a railroad right-of-way essential to the operation of such railroad. [44 C. J., p. 877; Wabash Railroad v. City of St. Louis, 64 Fed. (2d) 921.]

The Supreme Court, in Heman Constr. Co. v. Wabash R. R. Co., 206 Mo. 172, held that, under the Charter of St. Louis, providing that "all property" in the defined benefit district shall be subject to special taxes for the improvements of streets applied to railroad rights-of-way. [See, also, Gilsonite v. R. R. Co., 240 Mo. 650.]

We are of the opinion that, under sections 7204 and 7367 a tax bill, properly issued by a city of the fourth class, is a lien upon that part of the right-of-way of a railroad company that is properly assessed for its payment, although it may be proper to also render a general judgment against the railroad. [44 C. J., p. 877.] This is not true of tax bills issued by cities of the first class, such as was under consideration by this court in Associated Holding Co. v. Kelley, *supra*, and for this reason that case is not in point. There is nothing necessarily inconsistent between a lien and a general judgment upon a tax bill against a railroad. [City of Lowell v. Wyman (Mass.), 12 Cushing, 273, 276; City of New Haven v. Fair Haven et al., 38 Conn. 422.] There is nothing in Article 9, Chapter 38, Revised Statutes 1939, applying to cities of the fourth class, or, in section 7367, Revised Statutes Missouri 1939, requiring that the name of the owner of the property be stated in the tax bill, and we hold that such is not required. [44 C. J., pp. 674, 675, 676.] Even, if such requirement had been made the tax bills sued upon would not have been void for failing to mention the name of the real owner but would only deprive them of their status as to *prima facie* evidence of the legality

of the proceedings, the validity of the tax bills, of the doing of the work and the furnishing of the materials charged for, and of the liability of the property to the charge stated in the bills, as against the true owner, which is provided for bills properly issued, in section 7207, Revised Statutes Missouri 1939; Stadler, Admr., v. Roth & Meyer, 59 Mo. 400; City of St. Louis, to the use of Rotchford, v. De Noue et al., 44 Mo. 136; Barrie v. Richmond Cemetery, 285 S. W. 130.

The owner of an easement in a railroad right-of-way (and the evidence shows that the defendant in this case was at all times such owner of the easements in question), has the same opportunity of ascertaining that a tax bill has been issued against it as any other owner of land, and there is no more reason to hold that a tax bill issued against a railroad right-of-way, which does not name the owner, be declared void than to declare void a bill issued against the land of an individual owner. We hold that the tax bills were not void as to this defendant because it was not named as the owner in them. However, they are deprived of their *prima facie* status, as provided by section 7207, by reason of the fact that the amended bills were not certified by the Mayor, who was in office at the time of the issuance of the original bills. [Stradler v. Roth & Meyer, *supra:*] The statement made in Galbreath v. Newton, 45 Mo. App. 312, 318, 319, to the effect that such bills so signed, are void, is *obiter* and is not to be followed.

It is next insisted that the instruction in the nature of a demurrer to the evidence should have been given for the reason that the various resolutions and ordinances passed by the Board of Aldermen "all show that the improvement was limited and to be the roadway along the center line of Blackstone and Boggs streets, and we urge that there was no legal authorization by Higginsville, for the paving of the railroad right-of-way which . . . was not a part of Blackstone or Boggs streets; . . . ;" that "paving improvements of a street, in order to be legal, must designate, and be on the street"; that user could not make the roadway a part of Blackstone and Boggs streets.

The proceedings, and the tax bills, all show that the entire eight blocks that were improved were described and treated as Blackstone and Boggs streets (a continuous thoroughfare). The whole eight blocks were improved (except as to the railroad tracks), which eight blocks covered and involved the highway over the right-of-way. There could be no doubt whatever what property the Board of Aldermen contemplated should be improved, a part of the same being the highway over the right-of-way established by user and running between the ends of Blackstone and Boggs streets as regularly established streets. If Boggs Street, the highway established by user crossing over the right-of-way and Blackstone Street, had been separate highways, then the city would have had authority to improve all three in one proceeding and assess the property as though the improvement

were upon one street. [See Frazier v. City of Rockport et al., 202 S. W. 266.]

Section 7201, Revised Statutes Missouri 1939, provides that the cost of the paving, etc., of all streets, etc., "shall be levied as a special assessment upon all lots and pieces of ground upon either side of such street, avenue, alley or other highway, or part thereof or connection therewith, abutting thereon, along the distance improved, in proportion to the front foot."

Section 7203 provides that "the cost of paving or macadamizing the squares and areas as formed by the crossing or meeting of streets and other highways, or parts thereof or connection therewith, shall be levied as a special assessment, and paid for as follows: Such area shall be divided into parts or portions by lines drawn lengthwise along the middle of each of said streets or highways so intersecting or meeting, and the cost of said parts or portions shall be levied as a special assessment against the block or square contiguous to each, and prorated against the lots or pieces of ground in such block or square abutting on the street improved."

The improvement involved herein included the paving of the intersection of Talmadge Street with Boggs-Blackstone streets (a continuous thoroughfare).

Defendant insists that the assessment should have been made under the front foot rule and, under this rule, each tract should bear its proportionate share of the entire cost of the improvement, and not the mere cost of the portion in front of it; that such rule could not be applied in this case because sixty-five feet, being the distance across the five railroad tracks on the right-of-way, was not paved.

The front foot rule is described as being one requiring "that the abutting owner shall be charged with an equal proportion of the entire cost of the improvement according to the frontage of his property, and not the cost of the particular square in which the lot is situated, nor the cost of the work done in front of the individual lots assessed." [44 C. J., p. 661; Weber v. Schergens, 59 Mo. 389.]

The statute does not require the entire width or length of a street to be paved and the Board of Aldermen had the power to determine the character and extent of the improvement that should be made in this instance. There is no merit in the contention that the city should have paved the sixty-five feet in question. [City of Springfield to use of Central Natl. Bk. v. Weaver et al., 137 Mo. 650, 669; 44 C. J., p. 166.]

It is further insisted that there is no evidence that the right-of-way was ever assessed according to the front foot rule, and that Ordinance No. 396, making the assessment "shows that the distance of front feet on neither the west nor east side of the tracts of ground and railroad right-of-way, were ever computed, and were left blank." The engineer testified that he assessed the cost of the intersection of Talmadge

Street in accordance with section 7203 and that the whole was assessed according to the front foot rule. Taking his testimony, as a whole, we infer that he made the assessment in accordance with sections 7201 and 7203 which, when read together, provide that the lots, etc., shall be assessed in accordance with their frontage upon the improvement. These sections provide that, when there are intersecting streets, the assessment, as a whole, shall be made in accordance with the front foot rule combined with the rule laid down in section 7203 relating to intersections.

The ordinance making the assessment does show that the distance in question was left blank but there is no affirmative showing in the ordinance that the distance in front feet were not computed. Why the distance in front feet is not stated in the ordinance relative to the railroad, whereas, it is stated in reference to all other property fronting on the improvement, is not explained and, while though not explained, we are not authorized to speculate in reference to the matter. The ordinance, taken as a whole, shows that the assessment was made in accordance with the law. The engineer's report, which was approved by the Board of Aldermen, states that he had apportioned the cost of the improvement against the lots and tracts of land chargeable therewith *"according to the frontage as provided by law."* (Italics. ours.) The statute does not require that the ordinance set forth the frontage of the various lots and tracts of land, and the same need not have been disclosed in the ordinance. [The City of St. Joseph to use of Gibson v. Farrell, 106 Mo. 437.] The ordinance, of course, must have disclosed upon its face the rule or method of assessment followed (2 Page and Jones, Taxation By Assessment, p. 1518; Hamilton, Law of Special Assessments, p. 437), but such is disclosed in the ordinance. [See City of Springfield v. Sale et al., 127 Ill. 359, 363; Warren v. City of Grand Haven, 30 Mich. 23, 24, 30; DeLas Cases Petitioner, 178 Mass. 213, 219; Adams Petitioner, 165 Mass. 494, 499, 501; Wright v. City of Chicago, 48 Ill. 285.]. The presumption is that public officials properly perform their duties and it will be presumed in this case, although the tax bills are not *prima facie* evidence of their validity, that the Board of Aldermen proceeded as the ordinance recites. The burden was upon the defendant to show that it did not comply with the law. [44 C. J., pp. 678, 679, 680; 43 C. J., pp. 200, 580; Cox v. Mignery, 126 Mo. App. 669; Delmar Inv. Co. et al. v. Lewis et al., 196 S. W. 1137, 1139; 2 Page and Jones, Taxation By Assessment, pp. 1526, 1527, 1692.] The ordinance shows that the Board of Aldermen made the assessment in accordance with sections 7201 and 7203, Revised Statutes Missouri 1939. [Heman Constr. Co. v. Loevy, 179 Mo. 455, 466, 467.] The fact that lots of the same frontage upon the improvement were assessed in varying amounts does not show that the assessment was made according to the area of the property improved, or otherwise improperly, in view

1218

of the requirements of section 7203. While Talmadge Street is the only intersecting street about which any specific inquiry was made at the trial, there may have been others.

The fact that a part of the right-of-way, in front of which no paving was done, was included in the amount of land of the defendant assessed does not render the tax bills void. [Mo. Real Estate & Loan Co. v. Hurd, 24 S. W. (2d) 106, 107; Constr. Co. v. Inv. Co., 179 Mo. App. 229; City Trust Co. v. Cunningham, 20 S. W. (2d) 930; Mound City v. Melvin, 205 S. W. 254.] We have examined University City v. Amos, 156 S. W. (2d) 65, cited by the defendant and find it not in point.

It is next insisted that there is no provision of law permitting a city of the fourth class to pave a street or highway across the right-of-way of a railroad and assess it for the improvement. Defendant admits that the cases of Heman Constr. v. Wab. R. R. Co., 206 Mo. 172, and the Gilsonite Constr. Co. v. Railroad, 240 Mo. 650, upheld the assessments or the cost of street improvements along the side of railroad rights-of-way, but says that these cases are not authority for the contention that a railroad can be assessed for a highway intersecting a right-of-way. The provisions of the statute are plain in reference to this matter. Section 7367 provides that railroad rights-of-way shall be subject to assessments for public improvements by a city, town or village, "in the same manner and to the same extent, in all respects, as the real property of any person or corporation" therein, etc.

However, defendant says that sections 5214, 5215 and 5216, Revised Statutes Missouri 1939, providing for the construction, maintenance and paving of highways over railroad crossings, are exclusive.

Section 5214 provides that every railroad company shall construct good and sufficient crossings where the railroad crosses public roads, or village or town streets, and provides in what manner the crossing shall be maintained; that if the company fails to construct or maintain such crossings, then the overseer or the municipal authorities, or other parties having control or charge of said road or street, shall notify such corporation of the necessity of the construction thereof; and if the corporation fails to construct the crossing within thirty days after the date of such notice or petition such party shall proceed to construct said crossing and shall be entitled to recover double the amount expended, and such corporation shall be liable for all damages resulting from the negligence to construct such crossing. This section applies only to railroad crossings and approaches thereto and not to rights-of-way outside of such crossings and approaches. [Crane v. K. C. So. Ry. Co. et al., 203 S. W. 640.]

Section 5215 provides that whenever any city, town or village, ting or adjoining any such street, etc., to pave, curb, grade, etc., or paved, improved, repaired, etc., it shall be the duty of every railroad

corporation. owning, operating or leasing any railroad crossings abutting or adjoining any such street, etc., to pave, curb, grade, etc., or otherwise improve and repair the parts of said street upon which the right-of-way of said railroad abuts or adjoins the same, to the same extent, of like materials and of as good quality as the city, etc., has required, or shall in such ordinance require of other property owners abutting upon said street, etc., or otherwise improving or repairing of said street, etc.

Section 5216 provides that if the railroad shall refuse to so pave, curb, etc., any street, etc., where it crosses the railroad, then the city, upon notice, may do so itself, and recover from the railroad double the amount expended, together with all costs.

It is the position of the defendant that these statutes are exclusive and must be followed where the paving is on a railroad right-of-way and that section 7367 is not applicable. This section is not ambiguous and clearly provides that improvements, such as the one herein involved may be constructed across railroad rights-of-way and that that part of the right-of-way fronting or abutting upon the improvements, shall be assessed for its proportionate cost of the improvements. We, therefore, conclude that section 5214 is not broad enough to cover the entire right-of-way and that sections 5215 and 5216 are not exclusive provisions for the construction and maintenance of railroad crossings and rights-of-way but the city has an election to proceed in the manner done in this instance. We are not here concerned whether the city, or the railroad company, or both, is liable to a third party suffering damage by reason of improper construction of a crossing or failure to make repairs in a pavement where it crosses a railroad right-of-way.

Section 5627, Revised Statutes Missouri 1939, relating to the jurisdiction of the Public Service Commission over railroad crossings is not in point. There is no evidence that the Public Service Commission ever assumed jurisdiction over this crossing. [See Liddle v. Thompson, 162 S. W. (2d) 614, 621.]

It is insisted that the description of the land sought to be assessed in the amended tax bills is insufficient and is ''no different than had a tract of ground of 'John Jones' sought to be assessed by describing it as the southeast and west line, etc., of John Jones' lot, instead of giving the lot and block number and addition, as shown on the recorded plat''.

There is no evidence that the right-of-way assessed was ever platted into lots or blocks. The description in the amended tax bills, we think, was sufficient as, undoubtedly, a surveyor could locate the land assessed by the description contained therein. [44 C. J., pp. 673, 681; John Hill Constr. Co. v. Goldsmith, 237 S. W. 860.] We have examined the cases cited by defendant on this point and find them not applicable. The Board of Aldermen had authority to cause the tax

1220

bills to be amended in the manner in which they were amended. [Galbreath v. Newton, *supra*; State ex rel. v. St. Louis, 183 Mo. 230, 236; The Dollar Savs. Bk. v. Ridge, 183 Mo. 506; Weber v. Schergens, 28 Mo. App. 587; 44 C. J., p. 683.]

Defendant attempts to raise a constitutional question. One of the grounds assigned by defendant for a new trial, in its motion for a new trial, is "Because the verdict and judgment are not in proper form and substance and are contrary to law and amount to a depriving of this defendant of its property without due process of law or the equal protection of the law and discriminates as to this defendant, all contrary to Section 30, Article 11 of the Constitution of Missouri." This assignment is not sufficiently definite to raise a constitutional question. [State ex rel. v. Mo. Dental Board, 221 S. W. 70, 73.]

It is insisted that plaintiff's Instruction No. 3 is erroneous, in that it informs the jury that it might award plaintiff interest from January 13, 1929, at the rate of six per cent per annum. Defendant says that it would not be just to charge it with interest for the nonpayment of the original tax bills; that the descriptions contained in the original tax bills were so faulty as not to amount to any descriptions, and that defendant could not know of its property being assessed, especially as defendant was not named in the tax bills as the owner of the property.

Section 7204 provides, in part, as follows: "Said special tax bills may bear interest after thirty days from the date of issue . . . , and every such special tax bill shall be a lien against the lot or piece of ground described in the same until the same is paid."

The statute is plain and we are not authorized to amend it by judicial interpretation. The tax bills sued upon were merely amended bills and the originals, as amended, bore interest thirty days from date of their original issue. [Galbreath v. Newton, *supra*; Boonville v. Stephens, 238 Mo. 339; Buckley v. City of Jackson, 125 Miss. 780.] The fact that Ordinance No. 529 provided that they bear interest from December 13, 1928, instead of thirty days thereafter, as provided by section 7204, was a mere minor irregularity. [44 C. J., p. 685.]

Complaint is made of the giving of plaintiff's instruction No. 4. This instruction told the jury that, if they believed from the evidence that during the year 1928, and for fifty years prior thereto, Blackstone and Boggs streets formed a continuous roadway over and across the railroad right-of-way of the Kansas City, St. Louis & Chicago Railroad Company, and had been used as a public thoroughfare for more than fifty years and that, during that time, defendant and its predecessors acquiesced in said public use, then that portion of the railroad right-of-way became a public street. This instruction authorized the jury to find that that portion of the highway extending over the railroad right-of-way became a public thoroughfare by prescription.

Defendant introduced in evidence the deeds conveying to it easements over the land upon which is situated the part of the right-of-way in question. Thereafter, plaintiff assumed the burden of showing that a public highway over the right-of-way had been established by user.

While there is evidence that the railroad right-of-way had been used by the public for more than fifty years, before the trial, as a connecting link between Boggs and Blackstone streets, there is no evidence that the twenty-four feet upon which the pavement was laid was the part traversed. It is well settled that the only right the public has in a highway, as the result of adverse user for the statutory period, is limited to the traveled or used portion of the road. [Hall v. Flagg Special Road Dist. et al., 296 S. W. 164, 165.]

There is no evidence as to what definite part of the right-of-way was traversed by the public and, while the pavement was only twenty-four feet in width, it does not necessarily follow that this twenty-four feet was the part that the public traveled. The public may have traveled this part at times and other parts of the right-of-way at other times. It must have traveled, for the statutory period, the part paved, in order for a prescription right by user to have been established. The city had no authority to pave the twenty-four feet in question unless it was the part that had been so established. [Roth v. Hoffman, 111 S. W. (2d) 988; Johnson v. Duer, 115 Mo. 366, 380.]

Defendant also makes the same contention in reference to the refusal of its instruction in the nature of a demurrer to the evidence. It follows, from what we have said, that this instruction should have been given and, also, that plaintiff's Instruction No. 4 is erroneous.

The petition alleges that the right-of-way was owned by the Alton Railroad Company. If the case is retried plaintiff should amend its petition so as to allege that the Kansas City, St. Louis & Chicago Railroad Company is the owner of the easement in the land in question.

The judgment is reversed and the cause remanded. All concur.