Peggy PATTERSON, Respondent,

v.

Guy A. THOMPSON, Trustee of the Missouri Pacific Railroad Company, a corporation, Appellant.

No. 7278.

Springfield Court of Appeals.

Missouri.

Feb. 24, 1955.

M. Walker Cooper, Bloomfield, for appellant.

Bloodworth & Bloodworth, Ted M. Henson, Poplar Bluff, for respondent.

RUARK, Judge.

Plaintiff received a verdict for $2,500 because of injuries sustained in a fall on a crossing where the Missouri Pacific railroad track and B Street in the city of Poplar Bluff intersect. The petition charges negligence in permitting a large hole between the rails in the traveled portion of the street; that the crossing approach was steep; that plaintiff was riding in a southbound truck then being driven by her husband and the wheels of such truck struck the hole and caused her to be thrown against the door or door handle, whereby the weight of her body released the catch and she was caused to tumble out and strike one of the rails. Defendant's answer was denial, contributory negligence and sole cause.

B Street north of the crossing was paved to the right of way line. On the south it was graveled. The approaches rose steeply from the right of way line to the crossing proper, which was considerably higher than the level of the street, "higher than an automobile," so that one approaching from the north in a motor vehicle could not see the space between the rails until the vehicle was upon the crossing. The interval between the rails had been filled with chat or what is referred to as Iron Mountain screenings. According to defendant's section foreman, the screenings had been packed on top but had not been bound by asphalt or any substance. This was put in at some time within two years before, at a time when the crossing was widened. No work was shown to have been done on the top of the crossing after that time, but the section crew did from time to time shovel or spread chat or screenings in place on the approaches.

Plaintiff established by ample evidence that from four to two weeks prior to the accident a hole had existed in the rut or wheel track on the west side of the crossing between the rails and immediately or shortly south of the north rail. This hole was described by some of the witnesses as a chuck hole and was variously estimated at from two feet to eighteen inches long, from two feet to six inches in width and from fourteen inches to four inches in depth. One witness described it as "down to the ties." One witness described it as "when you drove over the rail, you dropped off the rail." This witness said the reason he was familiar with the hole was that he had struck it and that his ten-year-old child had been thrown into the windshield. Another witness testified that he noticed the hole because he had a blowout there about eighteen days before the occurrence here involved. Still another witness said he had broken a spring on the crossing from a week to two weeks before plaintiff's accident.

The crossing was some 150 feet east of the section house, and the section gang in

charge of the section which included the crossing passed over and returned across it every work day. Frequently they stopped at or in the immediate vicinity of the crossing in order to fill their water keg from a neighbor's hydrant. A number of witnesses, including members of the section crew, testified that the hole as described by plaintiff's witnesses did not exist. Defendant's roadmaster testified that one of his duties was to inspect the roadbed and highway crossings approximately once a week, that he inspected this B Street crossing along with the others and that in the month prior to the accident there were no defects of any kind there apparent.

The first two assignments of error are aimed at the action of the court in overruling defendant's motions for directed verdict and in overruling defendant's motion to set aside the verdict and judgment thereon. As we understand appellant's contentions, they are (a) since 1913 the Public Service Commission has had exclusive jurisdiction over the maintenance and protection of such crossings and that plaintiff must prove the orders made by the Public Service Commission relative to such and defendant's failure to comply with the same; (b) that under section 88.507, RS Mo 1949, V.A.M.S., the city has power and authority to pave, reconstruct and repair any grade crossing, and that under section 88.100 RSMo 1949, V.A.M.S., the city has power to subject the railroad property to special assessments made by the city and (inferentially) it was incumbent upon the plaintiff to show that the crossing was not included in any ordinances of the city providing for such improvements.

■ When a railroad crosses a public street or highway there is a common law duty to construct and maintain the crossing in a condition which makes it reasonably safe for travel. Lee v. St. Louis & S. F. R. Co., 150 Mo.App. 175, 129 S.W. 773; Crockett v. City of Mexico, 336 Mo. 145, 77 S.W.2d 464, loc. cit. 466; Matthews v. Missouri Pac. Ry. Co., 26 Mo.App. 75, loc. cit. 80; Railroads, 44 Am.Jur., sec. 294, p. 515.

■ However, the statute, now section 389.610 RSMo 1949, V.A.M.S., in so far as its terms apply, supplants the common law in reference to the physical features of construction and maintenance of the crossing proper. Subsection 1 of this statute provides:

"Every railroad corporation shall construct and maintain good and sufficient crossings where its railroad crosses public * * * streets * * *, which crossing shall be constructed of material and in the manner following: On each side of each rail shall be laid and evenly spiked to the crossties a plank of good sound timber of not less than ten inches in width, three inches in thickness * * * nor less than twenty-four feet in length on all streets * * *. The space between the inside planks shall be filled with macadam or gravel or two-inch boards evenly with the top of the planks, and shall make good and sufficient approaches thereto * * *."

■ Subsection 2 specifically declares liability for nonperformance in regard to construction; but as to maintenance it is held the requirement is governed by the ordinary rules of negligence, and notice and opportunity to repair must be shown. Liddle v. Thompson, 236 Mo.App. 1071, 162 S.W.2d 614, 619; Nixon v. Hannibal & St. Joseph R. Co., 141 Mo. 425, 42 S.W. 942.

■■ The statute (now section 389.640 RSMo 1949, V.A.M.S.) gives the Public Service Commission power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing. We do not interpret this as giving the Commission the power or authority to exempt a railroad from complying with its duty to maintain its crossings. The Public Service Commission law was intended to supplement, not to repeal, existing law except where in direct conflict with it. Clark v. Mississippi River &

B. T. R. Co., 324 Mo. 406, 23 S.W.2d 174; 74 C.J.S., Railroads, § 718, p. 1317.

Be that as it may, there was no evidence that the Commission had assumed jurisdiction with respect to this crossing and made any order apportioning the obligation to maintain it. The burden in this respect would be upon the defendant. Clark v. Mississippi River & B. T. Railway, supra, 23 S.W.2d loc. cit. 177; City of Higginsville v. Alton R. Co., 237 Mo.App. 1204, 171 S.W.2d 795, 804.

Section 88.507 RSMo 1949, V.A.M.S., empowers the city to grade and otherwise improve the street and provides a method of charging cost of same against abutting property owners. Section 88.100 RSMo 1949, V.A.M.S., makes railroad property, including rights of way, subject to special assessments for public improvements. These statutes do not, of themselves, cast upon the city the burden of maintaining a railroad crossing, nor do they relieve the railroad from its duty to maintain them. Nor was there any showing that the city had acted to assume the responsibility. We find nothing in the authorities cited by the appellant to support his contentions as to this assignment; and we may further say that, regardless of the merits of his contentions in this respect, the evidence shows that the railroad assumed and carried forward the burden of inspecting and maintaining the crossing. We deem it unnecessary to pursue the subject further.

The third assignment of error is in respect to the giving of plaintiff's instruction number 1, the meat of which is as follows:

"* * * and you further find * * * that the said defendant permitted or allowed the said crossing to become in a rough and defective condition in that at said time and place a hole was present on said crossing between defendant's two iron rails, if you so find, and that the defendant negligently allowed or permitted the said hole and condition to exist, if you so find, *and if you further find* that because of such condition said crossing was not reasonably safe for persons to use, if so, and if you further find from the evidence that defendant knew of such condition at said crossing or by the exercise of ordinary care could have known thereof, if you so find, in time, by the exercise of ordinary care to have remedied said condition *and* made the same reasonably safe for persons to use, if so, and you further find from the evidence that plaintiff on or about the 18th day of October, 1952, while riding in a 1941 Dodge motor vehicle * * *." (Emphasis ours.)

It is contended that the instruction was erroneous in that (a) it gave an improper definition of a "good and sufficient crossing" and the use of the words "reasonably safe" gave the jury a roving commission; (b) it did not require the jury to find that the defendant had actual or constructive notice of the defect "in time thereafter to make repairs before the time of the alleged injury." It will be noted that the use of the words "reasonably safe" was both times in conjunction with the requirement in respect to finding that a defect (hole) was present between the rails and in respect to the time allowed to remedy the condition. The jury were required to find not only that the hole existed but that because of such condition the crossing was not reasonably safe. It required actual or constructive knowledge in the defendant, not only in time to remedy the condition but also in time to make the crossing safe. The words "reasonably safe" are not *obnoxious* to a proper description of defendant's duty and they only added to plaintiff's burden. To be a "good and sufficient crossing" it must be one such as will enable travelers with wheeled vehicles to pass over the tracks with reasonable safety. Tetherow v. St. Joseph & Des Moines R. Co., 98 Mo. 74, loc. cit. 77, 11 S.W. 310; Brown v. Hannibal & St. Joseph R. Co., 99 Mo. 310, loc. cit. 317, 12 S.W. 655; Sandretto v. Quincy, O. & K. C. R. Co., 218 Mo.App. 590, 265 S.W. 856, loc. cit. 859. See Niedner v. Wabash R. Co., Mo.App., 219 S.W.2d 886, loc. cit. 890. An infinitesimal de-

fect, or a negligible variation from the method of construction and maintenance imposed by statute, might not be such a breach of duty as to render the railroad liable for its violation, but a failure to perform the duty to such an extent that the crossing was not "reasonably safe" would be actionable.

■ As to the contention that the instruction does not submit a breach of statutory duty, it is true that the statute has fairly well swallowed the common law in respect to the duty to maintain, and (absent showing of circumstances requiring a greater duty) the requirements and specifications of the statute are the criterion by which the crossing is to be judged as " 'good and sufficient.' " Nixon v. Hannibal & St. Joseph Railroad Co., supra; Crane v. Kansas City Southern R. Co., 199 Mo.App. 448, 203 S.W. 640, loc. cit 642; Wilks v. Thompson, Mo. App., 150 S.W.2d 514. It would be an anomaly to say that a crossing constructed in accordance with the specifications and with the material prescribed by statute is sufficient, but that its maintenance according to those identical specifications is not such. Assuming, therefore, that the instruction must stand or fall by the language of the statute, does the direction to find that the crossing was rough and that a hole was present on said crosssing between the rails submit a breach of duty under the statute? We think it does. The existence of the hole is the antithesis and denial of the fact that "on each side of each rail shall be laid and evenly spiked to the crossties a plank of good sound timber of not less than ten inches in width, three inches in thickness," and that "the space between the inside planks shall be filled with macadam or gravel or two-inch boards evenly with the top of the planks." A planked or an evenly filled place and a hole of the character described in the instruction could not occupy the same space between the rails.

In Camp v. Wabash R. Co., 94 Mo.App. 272, 68 S.W. 96, the petition declared upon common law liability. Plaintiff's instruction covered the whole statute and provided that if the jury found defendant had failed to construct such a crossing the verdict would be for plaintiff. It was held faulty in submitting breaches of duty not in evidence, but the court said, 68 S.W. loc. cit. 98:

"All that plaintiff was required to do in the case at bar was to state facts *which brought his complaint within the statute, by showing that defendant had omitted some duty defined by the statute. This he did, and that was enough,* under the rulings above cited, in the absence of any questioning of his pleading by defendant before the trial. If the approach to the track on defendant's right of way was dangerous for ordinary use, owing to want of care on defendant's part *in maintaining it in a reasonably safe condition for the passage of vehicles over the crossing,* then defendant would be liable for any resulting injury to persons, exercising ordinary care, driving along the public road there, because of the breach of duty imposed by the statute concerning the maintenance of a proper approach to the crossing." (Emphasis ours.)

■ The complaint that the instruction does not hypothesize actual or constructive notice in time to make the repairs is not well taken. The jury were told that if the defendant knew of such condition or by the exercise of ordinary care could have known thereof in time, by the exercise of ordinary care, to have remedied said condition and made the same reasonably safe for persons to use, if so, "and if you further find from the evidence that the plaintiff, on or about the 18th day of October, 1952, while riding in a 1941 Dodge motor vehicle," et cetera. The fall and consequent injury to the plaintiff was the event concerning which and because of which the trial was had. The jury could not have understood it in any other sense. We conclude the giving of instruction 1 was not error.

Appellant's final assignment of error is in respect to the giving of plaintiff's instruction number 3, which is as follows:

"The court instructs the jury that it is the duty of the defendant to maintain the crossing mentioned in evidence in a

condition which would be reasonably safe for public travel, and that it is the duty of defendant to make repairs on defects in said crossing which would make said crossing unsafe for public travel when defendant in the exercise of ordinary care knew or could have known of said defects."

The complaint is that this gave the jury a roving commission to determine what condition of the crossing would be "reasonably safe for public travel," and that it is not a correct statement of the law in that it ignores the legislative definition of a "good and sufficient crossing." We are compelled to the conclusion that appellant's contention is correct.

■■■ The general rule is that while abstract instructions are not favored, if they correctly declare the law and are accompanied by other instructions which properly apply the law to the facts, the giving of such is not error. Gettemeyer v. Thies, Mo.App., 51 S.W.2d 868; Riner v. Riek, Mo.App., 57 S.W.2d 724; Thornton v. Union Electric Light & Power Co., 230 Mo.App. 637, 72 S.W.2d 161; Stewart v. St. Louis Public Service Co., Mo.App., 75 S.W. 2d 634; Raymond Missouri Instructions, vol. 1, sec. 67, p. 56, and cases cited. But in order to sustain an abstract instruction it must appear that it not only properly declares the law but is not misleading. Benham v. McCoy, Mo., 213 S.W.2d 914; Killinger v. Kansas City Public Service Co., Mo., 259 S.W.2d 391; Plater v. W. C. Mullins Const. Co., 223 Mo.App. 650, 17 S.W.2d 658, loc. cit. 668; Steger v. Meehan, Mo., 63 S.W.2d 109; De Moulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, loc. cit. 567.

In Nixon v. Hannibal & St. Joseph R. Co., supra, instruction number 1, 141 Mo. at loc. cit. 433, 42 S.W. loc. cit. 943, stated:

"'* * * it was the defendant's duty to keep and maintain such crossing safe for the use of all persons to cross who, while crossing, should use reasonable care and caution in crossing over the same; and if any person, while in the exercise of reasonable care and prudence, be injured by the failure to have and keep such crossing in safe condition, then the defendant would be liable for such injury.'"

And instruction number 4, 141 Mo. at loc. cit. 434, 42 S.W. loc. cit. 944, stated:

"'The jury are instructed that the duty which the law imposes on railroad companies to keep their crossings of public roads in a safe condition for the use of travelers over the same is a continuous duty; * * *.'"

The court said, 141 Mo. loc. cit. 438, 42 S.W. loc. cit. 945:

"Also, as abstract propositions of law, the instructions are not correct in declaring that it was the duty of defendant 'to have and keep such crossing in a safe condition.' The measure of defendant's duty is prescribed by statute. If the crossing was built and maintained of the material and according to the specifications of the statute, defendant's duty was performed without regard to the effectiveness of the completed work to constitute a safe crossing. The question is, did defendant do what the statute required it should do to secure the safety of the public while crossing its road? If it did so, then there can be no liability."

The holding in this case is supported by Liddle v. Thompson, supra. In Smith v. Anderson Motor Service Co., Mo.App., 273 S.W. 741, loc. cit. 745, the jury were instructed that if they found the Crystal Mirror Plate Company engaged the defendant to furnish a truck and haul boxes, then it was the duty of the defendant to exercise reasonable care to furnish a truck in reasonably safe condition. This instruction was held error because it gave the jury a roving commission to find defendant negligent without further finding the necessary facts. The language of the court, 273 S.W. loc. cit. 746, was, "Such instructions as this tend to mislead the jury rather than to aid it to reach a just verdict." In Thornton v. Union Electric Light & Power Co., supra, 72 S.W.2d loc. cit. 165, an instruction told

the jury it was negligence for a carrier of electricity to maintain high voltage wires capable of causing injury along the highway where people were likely to come into contact, without insulating them, and it was no defense that the wires could not be insulated. The court held this to be reversible error because the statement of duty did not exclude the limiting factor that the wires were so maintained as not to endanger persons using the highway except for the occurrence of an intervening cause such as a collision of an automobile with one of its anchor poles. In Bourne v. Pratt & Whitney Aircraft Corp., Mo.App., 207 S.W.2d 533, plaintiff's instruction 1 told the jury that it was the duty of defendant to give plaintiff a service letter truly stating the cause of termination of employment. This was held error, 207 S.W.2d loc. cit. 541, because the jury might well have been influenced to find for the plaintiff for the reason that the service letter was not of the character plaintiff had requested.

■■■ Instructions must be read and construed together, and if they contain a complete exposition of the law and if they cover every phase of the case they are sufficient. Duffy v. Rohan, Mo., 259 S.W.2d 839, loc. cit. 841; Killinger v. Kansas City Public Service Co., supra; Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380; Evinger v. Thompson, Mo., 265 S.W.2d 726, loc. cit. 733. The test of the correctness of an instruction is how it will naturally be understood by the average men who compose our juries. Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, loc. cit. 545; Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, loc. cit. 453. In Fullerton v. K. C., Mo., Mo.App., 236 S.W.2d 364, it was said, in reference to an instruction referring to a hole in the street, 236 S.W.2d loc. cit. 366, that it could "only create confusion and misunderstanding on the jury's part, whereas it is the function of instructions to clarify the issues and make easier the task of the jury. We cannot know that the jury understood the law that they were to follow in arriving at their verdict."

■■■ The statement that defendant was under the duty to maintain the crossing in a condition which would make it reasonably safe for public travel, and to make repairs on defects in said crossing which made the crossing unsafe, we believe to be an erroneous statement of the law as applied to the issues in dispute before the jury. The words themselves, sitting in proper context and applied to certain circumstances, could be correct, but here the defendant was required by law to maintain the crossing in a reasonably safe condition *only within the framework of the requirements of the statute*. The declaration made to the jury was at best only a half-truth, and a half-truth, which by the omission of qualifying words is misleading, is a misstatement in itself. Here truth and falsehood have grappled in the same expression. If defendant had complied with the statute, then (absent other circumstances requiring further duty not pleaded, proved or submitted in this case) defendant would have complied with its duty to furnish a reasonably safe crossing. The existence of the hole itself was a hotly disputed issue of fact. There was evidence that the crossing was steep and that gravel on the crossing was loose. There was evidence from which the jury could have inferred that had the crossing been wider the plaintiff's husband might have "straddled" the chuck hole. The jury might well have believed that the hole did not exist, but that defendant had failed in its duty in that it had not kept the crossing "reasonably safe for public travel" in that the crossing was too steep, or the space between the rails was not concreted, or in some other manner defendant had failed to keep the crossing safe or had failed to make repairs on defects in said crossing which would make it unsafe.

Because of error in the giving of instruction 3, the case must be and is reversed and remanded.

McDOWELL, P. J., and STONE, J., concur.